[Crim. No. 296.  Third Appellate District.—May 25, 1915.]

## THE PEOPLE, Respondent, v. JAMES DUNLOP, Appellant.

CRIMINAL LAW—ASSAULT WITH INTENT TO COMMIT RAPE—EVIDENCE—
WITNESSES—COMPETENCY OF CHILD.—In a prosecution for assault
with intent to commit rape upon a child of the age of eight years,
the competency of such child to testify therein is a question for the
trial court to determine by the degree or extent of her understand-
ing and knowledge, and not by her age, and such question is one
that rests so peculiarly in the discretion of the trial court, that
its determination in most cases is not subject to review.

ID.—EVIDENCE—TESTIMONY OF DEFENDANT AT FIRST TRIAL.—In such
a prosecution it is not prejudicial to the defendant to permit the
district attorney to introduce in evidence the testimony given by
the accused at the first trial of the case, in which the jury failed
to agree upon a verdict, where such testimony contained no state-
ment which involved a confession of guilt or any admission which
would tend to establish guilt.

ID.—PLEADING GUILTY—ADVICE OF SHERIFF TO DEFENDANT.—It is
proper in such a prosecution to permit the sheriff to testify that
the defendant, while confined in the county jail, asked such officer
for advice upon the question whether he had better plead guilty
to the charge preferred against him, where it is shown that the
defendant was the first to open the conversation in which the ques-
tion was asked.

ID.—INCOMPETENT TESTIMONY—WHEN ERROR IN ADMISSION CURED.—
The defendant cannot complain of the admission of incompetent
testimony of the sheriff to the effect that the mother of the prosecu-
trix had told him the story of the assault as it was told to her by
the prosecutrix, where such defendant himself called the mother as
a witness and brought out from her such story in more detail than
testified to by the sheriff.

ID.—INSTRUCTIONS—INTENT—PRESUMPTION—COMMISSION OF UNLAW-
FUL ACT.—An instruction to the jury, based upon subdivision 1
of section 1962 of the Code of Civil Procedure, that there are
certain presumptions of law regarding a person's intent, and among
them is the one that a guilty intent is conclusively presumed from
the deliberate commission of an unlawful act for the purpose of
injuring another, is not sufficiently prejudicial to justify a reversal.

ID.—INSTRUCTIONS—EVIDENCE—MOTIVE.—An instruction that an absence
of a showing of evil intent or motive in the act of the defendant
constituted a circumstance which it was the duty of the jury to
consider in determining the question of his guilt or innocence, is
a correct statement of a rule of evidence.

ID.—TAKING OF INSTRUCTIONS TO JURY ROOM—DISCRETION.—The matter of the taking of the written instructions by the jury to the jury room is one which is left to the sound discretion of the trial court, whose action will not be disturbed unless an abuse of discretion is shown.

ID.—REFUSAL OF PROBATION—DISCRETION—APPEAL.—A refusal to entertain an application for probation after conviction cannot be reviewed on appeal, as such matter rests entirely in the discretion of the trial court.

ID.—SUFFICIENCY OF EVIDENCE.—In this prosecution it is held that the verdict is supported by the evidence.

APPEAL from a judgment of the Superior Court of El Dorado County and from an order denying a new trial. N. D. Arnot, Judge.

The facts are stated in the opinion of the court.

W. F. Bray, and J. P. G. Miller, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted of the crime of assault with intent to commit rape, and was sentenced by the trial court to a term of two years in the state prison at Folsom.

The defendant appeals from the judgment of conviction and from the order denying his motion for a new trial.

The following facts were disclosed by testimony submitted to the jury by the people:

The scene of the alleged assault was in a village called Camino, in the county of El Dorado. The person upon whom the assault is alleged to have been committed is one Margaret Mosby, a child, of the age of eight years when the crime was committed, and the daughter of a Mrs. Esterline, then residing with her family in said village. The alleged crime was committed late on the afternoon of the eighteenth day of June, 1914.

The defendant and one Dan McMahon, common laborers, were, on the said eighteenth day of June, and had been for some days prior thereto, occupants of a rented cabin situated in Camino.

During the day above named, both the defendant and McMahon had indulged freely in the use of intoxicating liquors

and, a brief time prior to the commission of the alleged assault, they were visibly under the influence of intoxicants.

It appears that, near the hour of six o'clock P. M. of said day, McMahon went into a grocery store for the purpose of purchasing some groceries. The defendant remained on the outside of the store and was engaged in conversation with several small children, among whom were Margaret Mosby and her twin brother, Daniel Mosby. McMahon, having selected such groceries as he desired, went out, called the defendant in and asked him to pay for the same. The defendant did as requested and thereupon the two men, carrying the groceries, started for their cabin. McMahon had known the Mosby children from the time of their birth. Dunlop, a comparative stranger in Camino, had known them from the time of his arrival in the village. However, the Mosby twins accompanied the two men to their cabin and with the latter entered therein. It transpired, after entering the cabin, that McMahon had neglected to procure some coffee at the time of purchasing the groceries and, upon discovering his omission in that particular, he left the cabin and returned to the store, leaving the two Mosby children at the cabin with the defendant.

After McMahon had left the cabin, the defendant gave the boy, Dan Mosby, a nickel and instructed him to go to the store and buy some gum. The lad started for the store and the little girl was about to follow him, when she was intercepted by the defendant and told by him to remain at the cabin until her brother's return. She remained at the cabin and the defendant, immediately after the boy's departure, removed his own shoes and placed the girl on the bed, tore a hole in her drawers and then, with his private parts exposed, got on top of and attempted to have sexual relations with her. She resisted him and cried out, but his superior strength enabled him to keep her in a position in which he could have satisfied his lust had he succeeded in effecting a penetration of her private parts.

Almost coincidently with the departure of the Mosby boy from the cabin, a youth by the name of Potts, having seen the girl enter the cabin and her brother leave it, and knowing, therefore, that she was alone in the cabin with the defendant, reported the fact to his father, whose home was then situated some forty yards from the defendant's cabin. At once real-

izing the impropriety of a female child being alone in a house with a strange man, Potts rapidly walked to the defendant's cabin and, stepping into the front door, saw the little girl with her dress up and her drawers down and at the same time saw the girl either fall or jerked down on the bed by the defendant, the latter throwing a quilt over both himself and her and then getting on top of her and moving his body in a revolting fashion. Potts also saw the defendant's private parts and testified that the condition thereof was such as may be supposed to be natural or usual in a male when laboring under the influence of a high state of sexual excitement.

Potts instantly called the little girl by name and commanded her "to get out of there" forthwith, and the child, almost in a state of collapse from fright, jumped from the bed and ran into an adjoining room. The defendant raised up from the bed and to his feet and commanded Potts to leave his cabin, saying in effect that he (Potts) had no business to intrude himself into his (the defendant's) home. Potts, however, insisted that Margaret had no right to be there with the defendant, and said that he intended to take her home to her mother. He thereupon followed the child into the room into which she had fled and found her attempting to pin up or adjust her drawers in which she failed, and then, taking the girl by the arm, led her out of the cabin and thence to her mother's house, the child carrying her drawers on her arm.

Mrs. Esterline, mother of the child, having been informed of the incident, immediately called up the sheriff's office at Placerville and reported the assault to the officials. The sheriff requested Mrs. Esterline to have some man or men to take Dunlop into custody and detain him until he (the sheriff) could reach Camino. Potts then started for the defendant's cabin for the purpose of taking charge of him. The defendant, however, had put his shoes and coat on and left the cabin, but two small boys (one a son of Potts) had seen the defendant leave the cabin and go in a northerly direction therefrom and into some brush along a roadway. These boys had observed Potts go to the cabin and from that concluded that he was in search of the defendant, and they then directed him to the place to which they had seen the defendant go. Potts went to the spot and there found the defendant lying on the ground. Potts commanded the defendant to arise, saying to him: "You are under arrest." The defendant arose to his

feet and Potts took him by the arm and started with him toward the business part of the village.  On the way, the defendant requested Potts to take him through or by way of a back street and also offered to pay Potts fifty dollars if the latter would "turn him loose."

Soon thereafter the sheriff arrived at Camino in an automobile and took charge of the prisoner.

An examination of the little girl by two physicians convinced them that her private parts had not been penetrated by the defendant.

On the way to Placerville in the automobile, the defendant admitted to the sheriff that he had "romped" with the little girl on the bed on the day of the alleged assault, but said that he did not harm her or have any intention of doing so.

After the defendant was preliminarily examined upon the charge before a magistrate and held to trial and was in the county jail in the custody of the sheriff, he accosted that officer one day when the latter was in the act of going out of the jail and said: "My attorney has advised me to plead guilty. What do you think about it?"  To which the sheriff replied that it would probably mean a lighter sentence for him if he did, but that he (the sheriff) was not the person to advise him upon that matter.

1. The first assignment against the legality of the judgment and the order appealed from is based upon the contention that the child upon whom it is charged that the defendant committed the assault, being under the age of ten years when she gave her testimony, was incompetent to become a witness, inasmuch as she appeared (so the contention is) to be "incapable of receiving just impressions of the facts respecting which she was examined, or of relating them truly" (Code Civ. Proc., sec. 1880, subd. 2), and that the court, therefore, fell into error in permitting her to testify concerning the facts of this case.

The question thus propounded is so far and peculiarly one whose determination rests in the discretion of the trial court that, in most cases, it would hardly be one which could be reviewed.  The law does not declare that children under the age of ten years shall not be competent to testify, but provides that their incompetency as such shall only be declared when to the trial court it is made to appear that they are incapable, by reason of the immature judgment necessarily found in

children under the designated age, to receive accurate impressions of the facts concerning which they may be called upon to testify and to state them truly. So, as has been said in some of the cases, the competency of a witness is really to be determined not by his age, but by the degree or extent of his understanding and knowledge (*People* v. *Bernal,* 10 Cal. 66; *People* v. *Craig,* 111 Cal. 469, [44 Pac. 186]; *People* v. *Swist,* 136 Cal. 522, [69 Pac. 223]), and this determination must depend upon the manner in which he gives his testimony, a test which is never available to a court of review when considering such a question.

There is nothing appearing upon the face of the testimony of the prosecutrix in this case from which we would be justified in concluding that she did not fully appreciate the seriousness of the conduct of the defendant toward her and the gravity of his situation as the defendant as well as the seriousness of her own situation as a witness. On the contrary, her testimony reads like that of one far beyond her years. She explained the defendant's conduct intelligently and seemed to possess a keen apprehension of the consequences of swearing falsely against another. Indeed, so well did she appear to have in her mind the facts of the foul conduct of the defendant that her story as told on her direct examination was as little shaken or disturbed by the long and tedious cross-examination to which she was subjected as that of any witness whose testimony we were ever required to examine. We find no possible reason upon which it may be held by this court that the court below erred or abused its discretion by declaring the prosecutrix competent to give testimony in this case.

2. Over objection by the defendant, the court permitted the district attorney to introduce in evidence the testimony given by the accused at the first trial of this case, in which the jury failed to agree upon a verdict and were discharged without arriving at one, and it is here contended that the ruling was erroneous and prejudicial to the defendant.

With no little force the attorney for the defendant argues that such a practice contravenes certain statutory safeguards established by law for the protection of the rights of a person whose life or liberty may be at stake in a judicial trial. (Pen. Code, secs. 688, 1323 and 1180). But, even if it were necessary to concede the soundness of counsel's position, we do not think that the ruling complained of could have worked

27 Cal. App.—30

any injury to the accused; for the testimony of the defendant at the former trial of this action contained no statement which involved a confession of guilt or any admission which could tend to establish his guilt. He said that the two Mosby children did not accompany him and McMahon to the cabin. While he admitted that he saw them at the cabin after he reached it and that they entered it, he declared that they remained therein only a moment and that, after they went outside, he, being considerably under the influence of intoxicating liquor, lay down on his bed, immediately fell into a deep sleep and from that time until his arrest by Potts, knew or realized nothing that might have occurred about his cabin. He emphatically denied that he in any manner tampered with the little girl. And, in his cross-examination, he strictly adhered to the story as he told it when directly examined by his own attorney.

Thus it will be observed, as before stated, that there was nothing in the testimony of the defendant given at the first trial of this case, and which the court allowed the district attorney to introduce in evidence at the trial of which the appeals here are the outgrowth, which could have been justly interpreted by the jury as being of an incriminatory character. Indeed, we are at a loss to understand what point the district attorney expected to accomplish by proving at the second trial what the defendant testified to at the former. The only feature of his testimony which we may conceive might have militated against the defendant would be his manner of giving it, but, obviously, his manner of testifying at a former trial could not be conveyed to the minds of the jury by the mere reading of the testimony to them by the district attorney.

3. It was not error for the court to allow the sheriff to testify that the defendant, while confined in the county jail, asked that officer for advice upon the question whether he (the defendant) had better plead guilty to the charge preferred against him. From the sheriff's testimony, it appears that the defendant was the first to open up the conversation in which he submitted that question to that officer. The latter had not previously been in conversation with the accused, and had made no suggestion or overtures to the latter which would call for such a question or the conversation in which it was propounded. While the advice thus sought from the sheriff by

the defendant did not involve, strictly, a confession of guilt, it nevertheless carried with it an admission (in a technical or juridical sense) of more or less significance, but even if it might well be said to be in effect a confession of guilt, yet it was, under the circumstances under which it was shown to have been made, competent for the people to bring it to the attention of the jury.

4. The court, over objection by the defendant, permitted the sheriff to relate what the mother of the prosecutrix had told him of the story of the assault as it was told to her by the little girl. The testimony so allowed was clearly incompetent and the ruling allowing it plainly erroneous. The testimony was obviously hearsay. But the defendant is in no position to complain of the ruling, for he called and placed upon the stand as his witness the mother of the prosecutrix, and brought out from said witness, even much more in detail than the sheriff gave it, the story of the child of the assault as the latter related it to the witness. A party will not be heard in criticism of a ruling whereby incompetent testimony is admitted against him when it is made to appear, as here, that he has himself introduced precisely the same evidence, and thus has sanctioned the ruling and the testimony of which he complains.

5. The defendant complains of the following instruction, given by the court at the request of the people: "There are certain presumptions of law regarding a person's intent, and among them is the following: That a guilty intent is conclusively presumed from the deliberate commission of an unlawful act for the purpose of injuring another."

That the said instruction, which is based upon subdivision 1, section 1962 of the Code of Civil Procedure, contains a correct abstract statement of a legal principle, is not denied; but it is claimed that it has no application to such a case as this and that its effect was to take from the jury the right of determining for themselves whether the defendant's act with and upon the prosecutrix was accompanied by an intent to commit the crime of rape. The writer has never favored the giving of that instruction to juries in criminal cases under any circumstances, because, while it must be true that the deliberate commission of an unlawful act for the purpose of injuring another necessarily carries with it a criminal intent, and the principle stated in the instruction is, therefore, obviously

sound, yet the statement of the principle in the language of the instruction under consideration is somewhat involved, or would be so to the average lay mind, and as so given (and it could hardly be given in any other language) it is likely to be misleading or confusing. Doubtless the court conceived the instruction to be appropriate in this case because of the testimony showing that the defendant forcibly threw the prosecutrix down upon the bed, tore her under-drawers and then attempted to insert his private parts into hers. It might with some show of reason be said that, the defendant having done the acts thus attributed to him, the necessary conclusion therefrom is that he intended to criminally violate the person of the prosecutrix, or, to be more specific, to accomplish the act of sexual intercourse with her, and that the proof of those facts rendered pertinent to the case the principle stated in the instruction under consideration. But we are not prepared to unqualifiedly so declare, nor is it necessary to the decision of this case that we should so hold; for, assuming that the instruction was not appropriate to the case as established by the proofs, still it cannot justly be held that it so prejudiced the defendant as to call for a reversal.

The court instructed the jury that the defendant was to be presumed innocent until his guilt was shown beyond a reasonable doubt; that ''whenever a specific intent is an element of an offense, no presumption of law can ever arise that will decide it''; that intent in such cases is ''a fact which must be proven to the satisfaction of the jury beyond a reasonable doubt to justify a conviction''; that the intent or intention with which the alleged act was committed must be arrived at by the jury ''from all the testimony in the case, and all the acts, conduct and circumstances that may be shown by the evidence in the case.'' These instructions correctly state the law upon the question of intent in a case of this character, and considered in connection with the fact that the evidence produced by the people in support of the charge, if it is to be believed (and whether it is or not is not an open question here, for that was a matter solely for the jury's determination), conclusively establishes the guilt of the accused, it cannot reasonably be said that had the instruction first considered not been given a different result would have been reached by the jury. In any event, this court cannot hold, after an examination and painstaking consideration of the whole record,

including the evidence, that the error in giving the instruction, if error it was, resulted in a miscarriage of justice. (Const. art. VI, sec. 4½.)

6. The defendant declares that the following instruction virtually told the jury that "if the prosecution failed to make out a case against him such failure should be considered in determining the defendant's guilt": "It is a pertinent and material inquiry as to the evil intent or motive of the accused, and if that evil intent or motive is totally absent, that is a circumstance in favor of the defendant, which must be considered by you in determining his guilt or innocence."

The instruction is somewhat awkwardly phrased, but it is clear enough to have enabled any intelligent person to understand that what the court thereby meant to say to the jury was that an absence of a showing of evil intent or motive in the act of the defendant constituted a circumstance which it was the duty of the jury to consider in determining the *question* of his guilt or innocence. As so understood, the instruction not only embraced a correct statement of a rule of evidence but a statement favorable to the accused.

7. It is next claimed that the court erred to the serious injury of the defendant by giving certain oral instructions to the jury without the consent of the accused and in requiring the jury to retire for deliberation upon the case without taking with them to the jury room the written instructions read to them by the court. (Pen. Code, sec. 1137.)

There is no affirmative showing in the record that the instructions submitted to the jury by the court were not in writing or that the court at any time or upon any proposition orally directed the jury in matters of law. Section 1127 of the Penal Code requires that all given instructions shall be in writing, unless both parties request the giving of an oral instruction or consent thereto. In the absence of a showing that the court orally instructed the jury, it must be presumed that the trial court complied with the provision of said section requiring that the instructions, when read to the jury, be in writing.

As to the objection that the court failed to require the jury to take with them to the jury room the written instructions constituting the court's charge upon matters of law, the reply is: That section 1137, which authorizes such a course to be pursued, is not mandatory. The matter is one which it is con-

templated shall be left to the sound discretion of the court, whose action thereon will not be disturbed unless such discretion is shown to have been abused. (*People* v. *Cochran,* 61 Cal. 548, 551; *Powley* v. *Swensen,* 146 Cal. 471, 482, [80 Pac. 722].) In the Cochran case, Judge McKinstry thus expressed his notion of said section: "In aid of their recollection of the contents of a paper given in evidence, or of an instruction given, the jury may ask for the paper or instruction; but, if they believe themselves sufficiently acquainted with the contents, they may decline to take the paper or instruction with them. It is not the absolute right of the prosecution or defense to have the papers or instructions sent with the jury, unless the jury demand it." It does not appear here that the jury asked for the instructions or for the privilege of taking them to the jury room.

8. The action of the court in refusing to entertain an application by the defendant for probation after his conviction or of taking testimony or the report of the probation officer of the court with a view to admitting the accused to probation cannot be reviewed. The matter of admitting a person convicted of crime to probation rests entirely in the discretion of the trial court, as does likewise the question whether any proceedings shall be entertained by the court to that end. (Pen. Code, sec. 1203.) Indeed, as we understand said section, the only question which may arise thereunder can never be as to the action of the court in refusing to admit a convicted person to probation, but must always be, if any reviewable question may arise thereunder at all, whether the court abused its discretion in granting probation.

9. The last point urged by the defendant is that the evidence does not support the verdict. It is only necessary to recur to the facts as they are stated in the outset of this opinion and which follow from the evidence introduced by the people to show that this contention cannot be sustained.

The child upon whom the outrage is charged to have been attempted by the defendant, although a mere infant in years, seemed to be possessed of a greater degree of intelligence and understanding than may ordinarily be expected to be found in children of her age. She appeared to have told a straightforward story from which, so far as the important points thereof were concerned, she did not depart under a most rigid cross-examination. She declared that she resisted the attempt of

the defendant to commit the act of sexual intercourse with her in the most effective way of which she, in her tender years, was capable. Thus there is evidence justifying the verdict returned, viz.: assault with intent to commit rape. (*People* v. *Akin*, 25 Cal. App. 373, [143 Pac. 795] ; *People* v. *Drennan*, 25 Cal. App. 645, [145 Pac. 106].) She was corroborated by the witness, Potts, and then there was other testimony, to which brief reference is made in the above statement of the facts, tending in some measure to prove guilt, and which it is not necessary to recapitulate here. The defendant did not take the stand at this trial, but viewing his testimony at the former trial which the district attorney introduced in evidence at the trial as his testimony in this case, a conflict in the evidence upon the main point in issue is the result.

The jury were the sole and exclusive judges of the credibility of the witnesses and the evidentiary force of their testimony, and, they having accepted the proofs presented to them by the people, we have found no just reason, after a careful examination of the whole record, for declaring their conclusion to be wrong.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.