[Crim. No. 2595.   First Dist., Div. Two.   Mar. 13, 1951.]

THE PEOPLE, Respondent, v. GEORGE WILLIAM ROBINSON, Appellant.

George William Robinson, in pro. per., and Joseph L. Bortin for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SCHOTTKY, J. pro tem.—Appellant George William Robinson was jointly charged by information in five counts with Lester Sparks and Willie R. Rogers with the commission of forgeries in violation of section 470, Penal Code. In count one it was charged that said defendants on September 24, 1948, in Alameda County, "with intent to defraud Alfred S. Benjamin, the Pacific Pipe Company, a corporation, Oscar Inyard, the Bank of America National Trust and Savings Association, a corporation, and each of them, falsely made, altered and forged a certain" payroll check of the Pacific Pipe Company in favor of Oscar Inyard for the sum of $84.72, and "uttered, published and passed the same as genuine and true to Alfred S. Benjamin, knowing the same to be false, altered and forged." The other four counts are identical with the first count except only as to the number of the alleged check and name of the persons alleged to have been intended to be defrauded, the second, third, fourth and fifth counts each alleging that the check set forth therein was uttered, published and passed to Maurice Brooks, Nathan Sirowitz, Arthur Mattal, and Frank Milana, respectively. Defendants Robinson and Sparks were also charged with the conviction of prior felonies, and both admitted such convictions.

After a trial before a jury, which lasted four days, all three defendants were found guilty. Motions for a new trial were denied, and defendant Robinson alone has appealed from the judgment and the order denying his motion for a new trial.

Upon the trial all three defendants were represented by the same two attorneys. Appellant Robinson has filed this appeal in propria persona and filed an opening brief prepared by himself with some assistance from others. This court thereafter appointed counsel to assist appellant and said counsel appeared and made an oral argument in behalf of appellant but appellant evidently did not choose to accept the assistance of the counsel appointed by the court as appears from statements in the closing brief, also prepared by appellant. As is not unusual in briefs prepared by laymen, appellant's briefs make many statements of alleged facts which are outside of the record, and make charges and accusations against officers, prosecuting attorneys and defense counsel which find no basis or support in the record.

We have studied the entire record with great care because we felt that appellant did not possess the experience or ability to enable him to adequately present the points of his appeal, and we are forced to conclude that not only was there ample evidence to support the conviction of appellant but the evidence in our opinion was so clear and convincing that it is difficult to understand how the jury could have arrived at any other verdict. Furthermore we are convinced that appellant was ably defended in the trial court and that he received a fair and impartial trial.

Before discussing the numerous contentions, if they may be called such, of appellant, we shall summarize the factual situation as disclosed by the record and as accepted by the jury.

On the night of August 28, 1948, a man named Oscar Inyard, a resident of Los Angeles, met a young lady on Central Avenue in Los Angeles, had a few drinks with her, and the next thing he remembered was that he awoke the next morning in a hallway minus his checkbook, his Bulova wrist watch, his Social Security card, his Notice of Classification Card, his army discharge papers, and other personal identification papers.

On the night of September 23, 1948, appellant Robinson and defendants Rogers and Sparks came to the King's Hotel at 1207 7th Street in Oakland together and registered and were given rooms. The next day a number of checks, dated

September 24th were cashed in the city of Oakland. These checks were all purported payroll checks of Pacific Pipe Company, were all for $84.72 and were all made payable to Oscar Inyard. One was cashed at a liquor store at 1818 7th Street by a man identified as defendant Rogers. Another was cashed at a liquor store at 1796 7th Street by a man identified as Robinson, and still another was cashed at a clothing store at 1586 7th Street by a man identified as defendant Rogers. Around 10 or 11 o'clock that night appellant and defendants Rogers and Sparks came to the manager of King's Hotel, Mrs. Rosa Winston, and Robinson asked her if she would keep some money, which she understood was Rogers' money, and he then gave her $130 and said "Now don't give this money up until I come back for it" and she then gave him a receipt stating that she had received $130 from W. M. Rogers.

The following day, September 25th, another check was cashed at a shoe store on San Pablo Avenue by a man identified as defendant Rogers. A few hours later on the evening of the 25th the offense giving rise to the fifth count of the information was committed when Rogers entered the D & M Liquor Store, 3823 San Pablo Avenue, Emeryville, and passed a check on Frank Milana the proprietor and one of his clerks. Rogers represented himself to be Oscar Inyard and exhibited papers including an army discharge in support of his claim. He endorsed the name "Oscar Inyard" on the check.

In the meantime Officer John L. Doyle of the Emeryville Police was called to the D & M Liquor Store and drove to a point near the entrance in an automobile. At this point Doyle joined another officer, Officer Guneri, who was seated in a second police car and who was watching the store. Officer Doyle then saw defendant Rogers walk out of the D & M Liquor Store and get into the back seat of an automobile which started up immediately. The officers drove their own cars into positions in front of and behind this automobile in which Rogers was riding thus forcing it to stop. Defendant Robinson was seated at the wheel of the vehicle and defendant Sparks was sitting in the front seat on Robinson's right. Officer Doyle turned a flashlight on defendant Rogers and as he did so Officer Doyle heard the sound of something falling to the floor in the rear part of the automobile occupied by the defendants. At the same time Officer Guneri asked Rogers if he cashed a check and Rogers said, "Yes, I did."

Officer Guneri took Rogers back to the D & M Liquor Store where Mr. Milana produced the check just received from Rogers, to wit, Exhibit 11. While inside the D & M Liquor Store, Officer Guneri asked Rogers for his wallet and it appears that Rogers did not have it in his possession at that moment.

While Officer Guneri, Mr. Milana and defendant Rogers were busy inside the liquor store, Officer Doyle, who had remained at defendants' car with Robinson and Sparks, found a wallet, in the back of their vehicle. When Rogers was brought back to the car by Officer Guneri, Rogers said, "I lost my wallet" to which Doyle having discovered Exhibit 43 replied, "I found it. Here it is."

Officer Doyle searched Rogers' wallet and found the Classification Notice stolen from Mr. Inyard in Los Angeles and the photostatic copy of a genuine photostatic copy stolen from Mr. Inyard. He also found a purported identification card of Pacific Pipe Company in the name and address of Oscar Inyard, 3810 West Street, Oakland and bearing Mr. Inyard's forged signature; an uncashed check purporting to be a check of Pacific Pipe Company made out to Oscar Inyard for $84.72, being the same type of check as the ones hereinbefore referred to as having been passed by defendants Rogers and Robinson; the receipt given by Mrs. Rosa Ella Winston to defendant Robinson for the $130 deposit made by him for defendant Rogers; and four strips of "green safety paper being notations as follows:

| "Total Comp. | 98.00 |
| Unemp. Ins. | .98 |
| Withholding | 12.30 |
| Total Ded. | 13.28 |
| Net total | 84.72" |

Officer Doyle found a second wallet in the automobile which contained a number of other checks of Pacific Pipe Company, all payable to Oscar Inyard and also some 48 uncashed checks, purported payroll checks of Stellar Negligee Inc., each payable to Cora Wood in the sum of $63.27.

All three defendants were taken to the Emeryville Police Station where they were booked and searched. Defendant Sparks was found to be in possession of another spurious identification card of Pacific Pipe Company for Oscar Inyard and another purported identification card in the name of Oscar Inyard and bearing Inyard's forged signature. When search-

ing the defendants at Emeryville station the police found $233.44 in possession of appellant Robinson, $77.79 in possession of defendant Rogers and $849.44 in possession of defendant Sparks.

Appellant Robinson upon being searched was found to be in possession of a checkbook, checks, filled in stubs and bank deposit book, in the name of Eddie Dooley as depositor and Jefferson San Pedro Branch, Bank of America as depositary; an identification card issued by United States Employment Service purporting to identify Oscar Inyard of 317 N Street; a California operator's license in the name of John Wesley Robinson but shown by a handwriting expert to be appellant Robinson's own; and also a temporary California operator's license bearing name and address of Oscar Inyard, 317 N Street Sacramento, but which was not Mr. Inyard's license. This last operator's license was used by appellant Robinson on September 24, 1948, as identification in passing a similar check by Pacific Pipe Company on Yen Jang, a merchant of 1546 7th Street, Oakland, appellant representing himself to be Oscar Inyard, and was also used by him in passing another spurious check in Sacramento earlier in the month.

There was also evidence that appellant Robinson passed two other false checks in Oakland on September 24th, representing himself to be Oscar Inyard and displaying the photostatic copy of Inyard's army discharge to prove it. More false checks were found but it would unnecessarily prolong this opinion to enumerate them. Also two bottles of ink eradicator were found in defendant Sparks' room in the hotel where all three defendants were living. There was also evidence that the Bulova wrist watch which was stolen from Oscar Inyard on the night of August 28th was found on appellant Robinson's arm about 6 inches up his arm when he was searched at the county jail, it not having been found when he was first searched at the Emeryville jail.

The Social Security card of Oscar Inyard found in Rogers' wallet was the same one used for identification by appellant Robinson and defendant Rogers in passing the checks described in the information, and it is clear from the various exhibits introduced and from the testimony in the record that appellant Robinson and defendants Rogers and Sparks were engaged jointly in the operation of passing the checks enumerated in the information and other checks as well.

All of the defendants took the stand. Defendant Rogers made a strong effort to take all of the blame for the offenses

charged and to clear defendants Robinson and Sparks. Both Robinson and Sparks denied their guilt.

Appellant first contends that the corpus delicti was not established and states that there was no proof that appellant had any intent to defraud the persons upon whom the checks were alleged to have been passed. The record, however, shows the passing of the checks, that they were forgeries, that they were not paid and the appellant's connection with the other defendants in passing them. The corpus delicti as to each count was amply proved.

Appellant next contends that he was denied the right to have legal counsel of his own choice. He claims that the money that was taken from his person when he was arrested was not released and therefore he was unable to employ the counsel he wanted. However the record shows that appellant was ably defended, and also that there was strong reason to believe that the money taken from appellant was money derived from the passing of the spurious checks and properly impounded as evidence. Furthermore the record shows no complaint made to the trial court before or during the trial.

Appellant next asserts that perjured testimony was used against him but there is nothing in the record to support such assertion and the jury which heard the testimony evidently believed it. The question of identification was one for the jury.

Appellant next complains that he was prejudiced by the admission of evidence tending to show that defendants had passed other forged checks before and after the passing of the ones set forth in the information. However the other offenses shown to have been committed by defendants were of a similar pattern to the offenses charged and showed a common scheme and design to defraud businessmen by the use of fraudulent and forged payroll checks. The jury was properly instructed as to the weight and effect of such evidence and that it could not be considered for any other purpose than to show whether or not defendants were motivated by fraudulent intent or whether there existed in their minds any plan, scheme or design into which fitted the description of any of the offenses for which defendants were being tried. The general rule is stated in 8 California Jurisprudence, pages 60-61, section 168, as follows:

"Evidence which is pertinent and tends to prove the crime alleged is not to be rejected because it also tends to prove the commission of other crimes, or because it may tend to prejudice

the defendant in the minds of the jurors. While it is impossible to state the cases in which such evidence is admissible with categorical precision, generally speaking such evidence is admissible when it tends to establish intent or guilty knowledge, motive, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, when it tends to connect the defendant with the crime charged . . .'' See also *People* v. *Peete,* 28 Cal.2d 306, 317 [169 P.2d 924] ; *People* v. *Collins,* 80 Cal.App.2d 526, 535 [182 P.2d 585] ; *People* v. *Smittcamp,* 70 Cal.App.2d 741, 745 [161 P.2d 983].)

■ Appellant next contends that the evidence is insufficient to support the jury's verdict of guilty. We have already given a brief summary of the evidence and are convinced that there was ample evidence to support the verdict. Appellant makes much of the fact that defendant Rogers admitted his guilt and sought to assume sole responsibility for the offenses committed. But the truth or falsity of such testimony of Rogers was a matter for the consideration of the jury and judging from the verdict of the jury, the jury did not believe his testimony that appellant took no part in the commission of the offenses charged.

■ Appellant next argues that the court erred in not giving a more comprehensive cautionary instruction that the testimony of the victims of the alleged forgery should be carefully scanned where in view of the evidence it was highly probable that different verdicts would otherwise have been returned. We are not aware of any cautionary instruction that the court is required to give in such a case. The jury was fully and fairly instructed on the law applicable to the case.

Appellant makes several other contentions such as that he was forced to trial represented by counsel who were not zealous in his behalf and failed to make timely objections to immaterial evidence; that evidence against him was manufactured; that his counsel refused to subpoena material witnesses favorable to him; that he was forced to trial with an admittedly guilty defendant; that his counsel refused to subpoena handwriting experts to prove his innocence. These contentions or charges find no support in the record and we would not be justified in unduly prolonging this opinion by discussing them in detail. ■ Statements of an appellant which are not supported by the record cannot be considered upon an appeal from the judgment.

In view of the foregoing, we believe that the appellant received a fair and impartial trial, that the evidence supports the judgment of conviction, that no prejudicial error was committed, and that the judgment and order denying appellant's motion for a new trial should be and the same are hereby affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied March 28, 1951.