[Crim. No. 919. Fourth Dist. July 30, 1952.]

THE PEOPLE, Respondent, v. SARAH J. RICKSON, Appellant.

Hyer & Graeber for Appellant.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged with the crime of forgery in raising the amount of a check payable to her in the amount of $74.63 to $174.63. She waived a jury trial and was convicted by the court. Probation was denied. She was sentenced to six months in the county jail. Three months of that sentence was suspended.

Between May 1, 1950, and March, 1951, defendant was employed as a bookkeeper for a San Bernardino furniture dealer, Abe Morris, at $175 per month. She prepared the checks used to pay the firm's obligations as well as her own salary checks. She also compared returned canceled checks with the firm's records. On February 28, 1951, she handed Morris a check prepared by and payable to her in the sum of $74.63 (being one-half month's salary). Before he signed it he noticed the amount payable by the check was $74.63. On March 19, the bank informed him the check had been charged to his account for the sum of $174.63. There had been added the word "One" in front of the words "Seventy Four and 63/100 Dollars" and the figure 1 had been inserted before the figures $74.63. It was later discovered that several other checks which had been similarly raised in this amount had been cashed by the bank. Morris's check stubs showed the check here involved as being issued in the sum of $74.63. The evidence shows that after defendant obtained Morris's signature to the check she took it to a liquor store

where she owed $15, and it was cashed by one Tham. He testified at the time it was presented that it appeared to be made out for $174.63; that he cashed it for her and deducted the $15 which defendant owed to him; and that he deposited the check with the bank. (The deposit slip so indicates.) When Morris learned that the check had been altered he employed an accountant to audit his books. He endeavored to reconcile the bank statement with the company's check stubs and canceled checks. Certain canceled checks were missing. Between November 18, 1950, and February 16, 1951, 11 checks were unaccounted for. The amounts recorded on the check stubs differed from the amounts paid by the bank in the sum of $100 each as to eight checks which were made payable to defendant. All other checks paid agreed with the sums for which they had been issued.

A handwriting expert compared the handwriting on the check involved with other checks known to have been written by defendant, and with other handwriting exemplars. He concluded that the word "One" was written by the defendant, at a different time, with a different pen and ink than the remainder of the face of the check.

Defendant testified she wrote the check in question for $74.63. She denied raising the amount of it and insisted that she cashed it for only $74.63 at the liquor store and that after paying her $15 debt, the manager gave her $59.63 in change. She denied knowing anything about the alteration of the check in question. She produced as her witness her husband, who had received letters from defendant while he was overseas. He testified he was familiar with her handwriting and that in his opinion the word "One" was not written by defendant.

It is first argued by defendant that the court prejudicially erred in admitting evidence, over objections, pertaining to the missing checks that had been raised $100 each. She cites such rules as are set forth in *People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7], in reference to the admissibility of other offenses. The evidence pertaining to these other claimed checks was clearly admissibile as tending to prove or explain facts relating to the crime charged, and as bearing on a common scheme or plan. Defendant had charge of all canceled checks and she made no attempt to explain the disappearance of the ones payable to her for salary and which apparently had been raised and cashed for the amounts indicated. An incriminating inference clearly arises from

such conduct. ■ Evidence of crimes other than those charged is admissible where it tends to establish intent, guilty knowledge, motive, a common scheme or plan embracing commission of several crimes so related that proof of one tends to establish the other, or if it tends to connect defendant with the crime charged. (*People* v. *Robinson,* 102 Cal.App. 2d 800 [228 P.2d 583] ; *People* v. *Woods,* 35 Cal.2d 504 [218 P.2d 981] ; *People* v. *Dabb,* 32 Cal.2d 491 [197 P.2d 1].)

■ Defendant also contends that the commission of a crime by her as to each check claimed to have been raised was not established beyond a reasonable doubt. If the evidence is relevant to explain or clarify the facts in the case, or is a circumstance pointing toward guilt of the defendant, such evidence does not need to be established beyond a reasonable doubt. (*People* v. *Klinkenberg,* 90 Cal.App.2d 608, 632 [204 P.2d 47, 613].)

■ It appears that after the expert witness testified that the raised check was all in the handwriting of the defendant, counsel for defendant moved the court, under section 1871, Code of Civil Procedure, to appoint a handwriting expert to examine the questioned document and testify on behalf of the defendant. The court denied the motion. Defendant claimed the court abused its discretion in so doing. The section referred to does not create an absolute right to a defendant in a criminal case to the appointment of an expert witness to testify in his behalf. (*People* v. *Porter,* 99 Cal. App.2d 506, 510 [222 P.2d 151] ; *People* v. *Conte,* 17 Cal.App. 771 [122 P. 450, 457] ; *In re Horowitz,* 33 Cal.2d 534, 540 [203 P.2d 513].) That section recites that whenever it shall be made to appear to any court that expert evidence is or will be required, such court "may" appoint such expert.

■ Defendant had full opportunity to examine the expert witness who testified as to his competency and ability. The trial court properly concluded that further expert testimony was not needed to enlighten the court as to the facts. Defendant produced a witness who testified on that subject. In view of all the surrounding facts, no abuse of discretion appears. (*People* v. *Shafer,* 101 Cal.App.2d 54, 59 [224 P.2d 778].)

It is next argued that defendant was denied a fair and impartial trial in that the "court took over the prosecution," laid "the foundation for evidence and then introduces the same." This complaint is predicated upon certain questions propounded to a witness by the court, after the prosecution

had questioned the witness in respect to laying the foundation for the admission in evidence of certain bank records and audits of accounts. No doubt this line of endeavor was to satisfy the mind of the court as to the authenticity of the evidence sought to be introduced and of its admissibility. ■ It is the duty of the judge to control all proceedings with a view to the "expeditious and effective ascertainment of the truth regarding the matters involved." (Pen. Code, §§ 1044, 1093, and 1094; Code Civ. Proc., §§ 2042 and 2044; *People* v. *Goodwin,* 132 Cal. 368, 372 [64 P. 561]; *People* v. *Hernandez,* 100 Cal.App.2d 136, 138 [223 P.2d 77].) ■ There is nothing in this case to show that the court was endeavoring to assist any particular party, but he was merely endeavoring to expedite the case. The matters upon which the court interrogated the witnesses were merely foundational points which it is obvious the prosecution would have developed in any event. There was no error in this regard.

Lastly, defendant contends that the court erroneously denied probation. It appears that the trial of the case was before Judge Mitchell. The probation hearing was set down for hearing before Judge Hilliard, without objection. The probation officer, by his report, recommended probation. Prior to the hearing defendant's attorney had filed a notice of appeal. It was charged that the latter judge ignored the recommendation for probation by the investigating officer, and since he did not hear the trial of the cause, he erroneously denied probation. It is further argued that since the court discovered that counsel for defendant filed a notice of appeal in the case before defendant's application for probation was considered, and since she still professed her innocence, the trial court became biased and prejudiced against her. An examination of the proceedings taken at the time of the pronouncement of judgment indicates that the judge stated: "I have received, here, and considered the report of the probation officer." The district attorney then called the court's attention to the fact that the defendant had filed a notice of appeal, that she insisted she was not guilty and had committed no wrong. He then stated that he "Can't follow with the recommendation of the probation officer. . . . Also, one other thing that does not appear in the probation officer's report, Your Honor, there were a number of other checks involved here, but only one had not been destroyed, . . . consequently we had no evidence except the differences in amount, and that does not appear in the probation officer's report at

all, although the bank records and the records of the complaining witness would so indicate.'' The court then summarized the report and stated that: ''It appears rather obvious that a defendant who persists in his or her innocence should exhaust their remedy rather than ask for extension of leniency by way of probation. . . .'' He concluded that rehabilitation was not possible, and he stated that he was inclined to agree with the district attorney in that regard.

■ A petition for probation is addressed to the sound discretion of the trial court. (*People* v. *Dunlop*, 27 Cal.App. 460, 470 [150 P. 389].) ■ It is true that the benefits of the probation law are intended for defendants who deny guilt and are convicted, as well as those who plead guilty. (*People* v. *Jones*, 87 Cal.App. 482 [262 P. 361].) In the Jones case the trial court refused to allow the defendant to apply for probation. The court's sole reason was that the defendant had pleaded not guilty and had been convicted by the jury, instead of pleading guilty. In the instant case a full hearing was had on the merits, the probation officer's report was fully considered, and after due deliberation the application was denied.

■ Had the trial court not considered defendant's formal application for probation and denied it, the effect of the suspended three months' sentence might have constituted a probation order (*In re Herron*, 217 Cal. 400 [19 P.2d 4]) but where there is an application for probation, a hearing had upon it, and an express denial of probation, there is no room for an implication or construction of the immediately following order suspending part of the sentence, and according to *Ellis* v. *Department of Motor Vehicles*, 51 Cal.App.2d 753, p. 757 [125 P.2d 521], it is said that in such a case, where the court does not act under the probation law, it has no power to suspend execution of any part of the sentence, and an order purporting to do so is void. See, also, *In re Taylor*, 140 Cal.App. 102 [34 P.2d 1036]; *In re Clark*, 70 Cal.App. 643, 646 [234 P. 109]; and *In re Eyre*, 1 Cal.App. 2d 451 [36 P.2d 842], where it is similarly held that where probation is denied no part of the sentence imposed may be suspended. Defendant should not be heard to complain.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.