[Crim. No. 5346.   Second Dist., Div. Two.   June 24, 1955.]

THE PEOPLE, Respondent, v. JOHN HAYDEN KERNS, Appellant.

James K. Turner and Ernest L. Graves for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of burglary in the second degree. Also, he was found to have had two prior felony convictions, to wit, robbery and forgery. His motion for a new trial having been denied, he now seeks a reversal of both judgment and order on the grounds of error in admitting testimony and in giving an erroneous instruction.

Mrs. Harvey and Mrs. Streeter, sisters, closed their store in Long Beach about 5 p. m. and securely locked the doors. About 11:15 p. m., Miss Mershimer who lived near the store was on her way home accompanied by a girl friend. She observed appellant with some keys trying to gain entrance into that establishment. He soon despaired of success with

his gentle approach, kicked out the window and crawled in. Thereupon, the observant girls called police who promptly arrived and took the housebreaker in charge. About eight minutes after he had entered, the officers brought him from the rear to the front door. There Miss Mershimer recognized him as the person she had observed break the window. She had seen him often in the vicinity and knew him as the brother of a girl friend who resided just across the street from the store. The testimony of Officer Hainley, who found appellant inside the store, observed the broken glass, heard the deceptive story of the culprit and his refusal to answer questions that were harmless for an innocent man, was sufficient when added to that of Miss Mershimer to warrant a conviction. But in addition, appellant took the stand and reeled off a bizarre narrative of having imbibed liquor at several bars, met a woman named Ardis with whom he drank beer at three saloons. He had seen her near the Harvey store while he roomed at his sister's home. She was 35 or 36 years of age, 5 feet 4 inches tall, with dark hair, prematurely gray. He testified that he sat for awhile in Ardis' car; that she stated she was leaving for Nevada that night to get a divorce, but had to pick up a few things at the "clothing exchange store" of herself and her husband before she left; that she must go to her husband's place to get the keys. He testified that she left and soon returned, saying that she could not get the keys, but must get two envelopes in the store, two dresses of her own, and would appellant assist her in getting them. He testified that they drove to a point near the Harvey store and parked; that Ardis said it would be all right for him to break in; that while Ardis remained in the car across the street he broke the window and crawled through to the inside; that he tried to open the door; could not; searched for the envelopes containing receipts she desired. He never asked her name, nor did she ask his.

After testifying that he had been convicted of robbery and forgery, he was asked by the deputy district attorney:

"Q. Do you recall back in 1949 telling the officers about a Marie that was with you when you broke the window of another store? A. No.

"Q. Well, to refresh your recollection, this officer sitting here to my left, Inspector Wishon, you recall him do you not? A. Yes.

"Q. You have talked to him before, have you not? Don't you recall back in 1949 when he was questioning you about

breaking a window at a place over at 3301 Eleventh in Long Beach and you told him that you had gone by there with a girl named Marie and that she had vanished when the police arrived? Do you remember that story? A. No, I don't.''

To the first of such questions, appellant objected on the ground that it was irrelevant. But it was not irrelevant. Inspector Wishon had testified concerning the circumstances of appellant's arrest for trespass in February, 1949, when appellant had said that prior to such arrest he had picked up a girl named Marie, in the Cinnabar Café; that they had engaged in intercourse back of that establishment; that when they were frightened, Marie ran away while he was caught by the officers; that she was 28 to 30 years of age, about 5 feet 6 inches tall, weighed 128 pounds, had black hair. Wishon further testified that appellant in conversation with him on October 4, 1954, gave a description of the woman who had had him enter the store for her, said she was 28 to 30 years of age, 5 feet 6 inches tall, dark hair and weighed 128 pounds. Appellant assigns as prejudicial the court's overruling his objections to such questions, and contends that such testimony did not come within exceptions to the general rule that prior unlawful acts of an accused are not admissible to prove his guilt of the act for which he is on trial; that they did not tend directly to establish the crime alleged or show intent or a common scheme embracing both offenses; that the evidence as to the previous incident must be identical with or very similar and close in time to the act alleged in the matter at bar.

There are two answer to such contentions. ▇ (1) The court read an instruction* limiting the application of the

---

*CALJIC 33. IN RE EVIDENCE OF OTHER OFFENSES:

''Evidence was offered in this case for the purpose of showing that the defendant committed another crime than the one of which he is accused and for which he is on trial in this action, namely, that of trespass, a misdemeanor.

''Such evidence was received for a limited purpose only: not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of the crime charged against him in this action.

''You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.

''The value, if any, of such evidence depends on whether or not it tends to show—

''That the defendant possessed knowledge that might have been useful in the commission of the crime for which he is now on trial; (or)

''—That there existed in the mind of the defendant a plan, scheme,

testimony objected to. It is observed that the jury were forbidden to infer therefrom a distinct offense but the evidence was received for such bearing as it might have on the question: "whether the defendant is innocent or guilty of the crime charged against him in this action." ▮ (2) It is the law that when the conduct of an accused person in a previous offense bears such similarity in significant respects to his behavior at the time of the commission of the crime under investigation "as naturally to be explained as caused by a general plan, the similarity is not merely coincidental but indicates that the defendant's conduct was directed by design." ▮ Remoteness of prior offense affects only the weight and not its relevancy. (*People* v. *Burns,* 109 Cal. App.2d 524, 537 et seq. [241 P.2d 308, 242 P.2d 9]; *People* v. *Rickson,* 112 Cal.App.2d 475, 479 [246 P.2d 700].)

▮ Evidence which merely tends to show an attempt to commit other offenses may be received to prove a common scheme or plan "even though it falls short of proving the *corpus delicti* of such other offenses." (*People* v. *Lisenba,* 14 Cal.2d 403, 431 [94 P.2d 569].)

▮ In the light of such authorities, it appears without extended suasion that apellant's story to the officer in 1949 is so nearly identical with that related after his apprehension in 1954 in attempting to exculpate himself from the burglary charge that the inference is irresistible that he had one permanent excuse for explaining his behavior. He had one woman to hide behind; in each instance she was in detail the same—the progeny of his imagination. He had met her in a café; she went to their rendezvous gladly; on neither occasion was the woman's name known to appellant; nor was any such woman ever found. Such conduct shows a common design, the same recipe for explaining in event of capture, or for establishing an alibi.

▮ Appellant himself placed his intent in issue when he testified on direct that he had no intention of stealing anything. In one action for rape, even though a former offense resulted in no prosecution, when the defendant was brought to trial for having entered prosecutrix's home to

---

system or design, into which fitted the commission of the offense for which he is now on trial.

"On the question whether or not the defendant possessed knowledge that might have been useful in the commission of the crime for which he is now on trial you may consider, for such bearing, if any, as it may have on that question the evidence that was offered to prove that previously he had committed another crime."

commit rape, he testified that he had no intent to commit rape. Evidence of his having, three months before, crawled into a bed where a woman and her husband slept, was admissible to rebut his disclaimer of intent when he entered the prosecutrix' abode. (*People* v. *Kinder,* 122 Cal.App.2d 457, 464 [265 P.2d 24].) No prejudicial error occurred in allowing the prosecution to cross-examine the defendant with reference to the circumstances of his prior attempt and the evidence elicited was proper and admissible. (*Ibid.*; see *People* v. *Peete,* 28 Cal.2d 306, 319 [169 P.2d 924]; *People* v. *Kynette,* 15 Cal.2d 731, 746 [104 P.2d 794]; *People* v. *Zatzke,* 33 Cal.2d 480, 484 [202 P.2d 1009]; *People* v. *Thorne,* 10 Cal.2d 705, 706 [76 P.2d 491].)

Appellant assigns as prejudicial error the giving of the instruction set out on the margin below.* The purpose of such instruction was to inform the jury that appellant had made statements at variance with his testimony at the trial and to define confession. It was followed by the instruction that the jury be cautions in considering any oral admission. The instruction quoted was pertinent and appropriate in view of appellant's statements to Inspector Wishon that he was in the store to help out a woman, his refusal to identify the lady, his failure to tell whether he had ever been inside the store before, his statement that he was supposed to meet the woman in front of the store to help her and that his purpose in going there was to pick up some clothing.

---

*CALJIC

"Evidence has been received in this case tending to show that on occasions other than this trial the defendant himself made statements tending to prove his guilt of the alleged crime for which he is on trial.

"A statement thus made by a defendant may be either a confession or an admission.

"A confession is a statement that was made by one who is a defendant in a criminal trial, at a time when he was not testifying in that trial, by which he acknowledged certain conduct of his own that constituted a crime for which he is on trial, a statement which, if true, discloses his guilt of that crime and excludes the possibility of a reasonable inference to the contrary.

"If under my instructions you find that a voluntary confession was made, you are the exclusive judges as to whether or not the confession was true; and in deciding that question you should consider all the circumstances connected with the making of the statement, as shown by the evidence.

"An admission is something less than a confession in that it does not concede so much pointing toward defendant's guilt, and does not alone, even if true, support a deduction of guilt. It may consist of any statement or other conduct by a defendant whereby he expressly or impliedly acknowledges a fact that contributes in some degree to the proof of his guilt of an alleged crime for which he is on trial, and which statement was made or conduct occurred outside of that trial.''

In any event, neither by the cross-examination of appellant with reference to his statement to the police in 1949 when questioned about his act of trespass, nor by the court's instruction was he prejudiced. Not only does all the record prove him guilty but he did not question the sufficiency of the proof. After the report had been telephoned that he was seen entering the place through a hole he had created by breaking out the glass, he was apprehended and arrested within the premises near midnight. He did not state a single fact, as against the People's proof, that would indicate his innocence then or at the trial. There is no legitimate basis for reversing the judgment. There was no miscarriage of justice. (Const., art. VI, § 4½.)

The judgment and the order denying his motion for a new trial are affirmed.

McComb, J., and Fox, J., concurred.