Argued January 6, affirmed January 13, petition for
rehearing denied February 9, 1960

# STATE OF OREGON *v.* PEDEN

### 348 P. 2d 451

*Harrison R. Winston,* Roseburg, argued the cause and filed a brief for appellant.

*George F. Weigum,* Deputy District Attorney, Roseburg, argued the cause for respondent. Avery W. Thompson, District Attorney, Roseburg, filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, O'CONNELL and HARRIS, Justices.

HARRIS, J. (Pro Tempore)

Defendant, Caroline Peden, was convicted by a jury of the crime of first degree arson, and from the ensuing judgment she appeals.

The indictment charged that on February 5, 1956, the defendant, acting in concert with one Lonnie D. Branscum, set fire to, and caused to be burned, and aided, counseled and procured the burning of, a dwelling house belonging to defendant. The actual burning was committed by Branscum.

It is the position of the state that the defendant counseled and procured Branscum to burn her dwelling, in which he was a tenant, for the purpose of collecting insurance. Branscum admitted the arson, stating he committed the act to obtain money defendant agreed to pay him therefor. Defendant did not take the stand.

Three assignments of error raise the following three questions: (1) Was the state's evidence sufficient to authorize submission to the jury of the issue of defendant's counseling or procuring the burning of the dwelling house in question; (2) was the testimony of witnesses McLarty and Densmore relating to their conversations with the defendant properly admitted in evidence; (3) did the court err in ad-

mitting into evidence state's exhibit H, which is a photostatic copy of a bank check?

■ By one assignment of error defendant contends that the court erred in failing to remove the case from consideration of the jury on the ground there was no evidence against defendant of an overt act on her part necessary to constitute a criminal offense. ORS 164.020, under which defendant was convicted, makes it unlawful for any person to counsel or procure the burning of a dwelling house by another. The question involved is the sufficiency of the evidence to sustain a charge of a violation of the foregoing statute.

Lonnie D. Branscum, the individual who actually committed the arson, was called as a witness by the state. He testified that he had known the defendant, Caroline Peden, approximately since September, 1955; that in November, 1955, some three months before the commission of the arson, he had a conversation with defendant concerning the dwelling house. Continuing, the witness testified as follows:

"Q What was the substance of that conversation?

"A It was burning the house for the insurance, sir.

"Q What was said?

"A Well, Mrs. Peden asked me if I had thought it over. She had talked to my wife before and I said, 'Yeah, I had thought it over,' and—

"Q And what did she say?

"A She asked me what I thought about it, and I can't remember the exact words. Something about she would give me $500.00 to burn it down."

The witness further explained that about a month subsequent to the first conversation, which would be

sometime in December, 1955, he had another talk with defendant as follows:

"Q  Now, on the last occasion that you talked with Mrs. Peden, what was said? Do you remember the conversation, who was present and where was it?

"A  Well, my wife was in the cafe. It was in the Winston Cafe in Winston, and Mrs. Peden asked me what I thought about burning the house and I didn't think very much about it. She said she would give me $500.00."

On cross-examination Branscum swore as follows:

"Q  I see. Was there—did she try to get an agreement from you of any kind? Or did she just say what do you think about it? Is that what she said?

"A  No, sir. She made me a definite offer.

"Q  Which was what?

"A  Five hundred dollars.

"Q  When and how were you supposed to do this? Was that discussed?

"A  No, sir.

"Q  I believe you said you stated you wouldn't do it, is that correct?

"A  Me and my wife had decided not to do it, yes, sir.

"Q  Did you tell Mrs. Peden you wouldn't do it?

"A  No, sir, I didn't.

"Q  I thought you testified that you told her you wouldn't do it, or was this the second conversation you had with her?

"A  Well, the conversation that she had asked me what I thought about the fire, and I told her I didn't think much about it.

"Q  This is the first conversation you had about it directly with her, isn't it?

"A  Yes, sir.

"Q   Now, the second time, what did you discuss with her?

"A   Well, if I remember right, she had asked me what we were going to do about it. If we wanted to, what we had decided on, and I said well, we hadn't decided, didn't think too much of burning it.

"*   *   *   *   *

"Q   Well, at the time you say that you spilled this kerosene over a lamp, it's not your contention that you had an agreement with her that you do that?

"A   Yes, sir, there was an agreement there.

"Q   I believe you said you had discussed it and she had in effect made you an offer, isn't that it?

"A   Yes, sir.

"Q   And you had advised her that you wouldn't do it?

"A   Yes, sir, but it was a standing offer that if it happened—

"Q   Well, now, you say it's a standing offer, who made it a standing offer?

"A   She did.

"Q   Well, in what conversation did that take place?

"A   With my wife.

"Q   With you wife? Not with you?

"A   No, sir."

As a result of the foregoing conversations with defendant, Branscum described the culminating act as follows:

"Q   What happened that evening?

"A   Well, we come back about 6:30, 7:00 o'clock. I can't say just the exact time, and we'd—I had got some kerosene to fill some kerosene lamps, and my wife had went out to the bathroom out back of the place, and I was filling some lamps and was thinking about the $500.00 that I needed pretty bad, and I let the lamp explode."

From the foregoing it is evident that there was sufficient evidence from which the jury could find defendant counseled and procured the burning of the dwelling house by Branscum; that defendant made Branscum a "standing offer" to pay him for such burning. Although Branscum expressed some diffidence at one time to commit the arson, he never gave defendant a definite refusal. He advised defendant: "* * * we had not decided." The jury could well find that defendant's offer was under continuing consideration by Branscum ("* * * we'd thought about burning the house, yes."), and that at the critical time, a few weeks after defendant's last offer to pay him $500 to burn the dwelling, he yielded to the temptation of the offer. ("* * * I was filling some lamps and was thinking about the $500.00 that I needed pretty bad, and I let the lamp explode.")

Undisputed evidence also indicates defendant paid Branscum $250 a few days after the fire.

As will later be indicated, evidence of defendant's prior attempts to have other persons burn the identical property was properly submitted to the jury for such bearing as it might have on defendant's guilt of the offense for which she was tried and to show a general plan or design upon the part of the defendant. In this case the overt act consisted of defendant's counseling and procuring Branscum to commit the arson.

The court did not err in refusing to withdraw the case from the consideration of the jury.

■ By assignment of error No. 2 the defendant contends the court erred in allowing state's witnesses McLarty and Densmore to testify over the objection of the defendant on the ground of remoteness that from 15 to 24 months prior to the date of the offense

for which defendant was on trial, the defendant had made statements requesting other persons to burn the same dwelling house herein involved. McLarty testified that defendant offered him $300 to burn the dwelling. Densmore stated defendant, within his hearing, requested one Chamberline "* * * to burn the house like she [defendant] asked him." Upon Chamberline's refusal, according to Densmore, defendant stated: "Well, then, if you will not do it you can move out. * * * I'll get somebody that will."

Defendant contends that the statements relative to other offenses occurring 15 to 24 months prior to the instant offense were objectionable on the ground of remoteness.

■ The general rule is that the length of time over which an inquiry, if otherwise permissible, as to other offenses committed by the accused may extend is within the sound discretion of the trial court. *State v. Keays,* 97 Mont 404, 34 P2d 855, 861; *Weiss v. United States* (CCA 5) 122 F2d 675, 682, certiorari denied November, 1941.

The Minnesota court has stated the principle as follows:

"* * * Whether evidence which is otherwise admissible should be excluded for remoteness also rests largely in the discretion of the trial court." *State v. DePauw,* 246 Minn 91, 74 NW2d 297, 300.

In *People v. Kerns,* 134 Cal App2d 110, 114, 285 P2d 81, the court stated:

"* * * Remoteness of prior offense affects only the weight and not its relevancy."

While the foregoing disposes of defendant's second assignment of error upon the only objection entered during the trial, out of deference to an appeal which

involves the liberty of defendant, we briefly note defendant's general statement in her brief that the testimony attacked by this assignment was "prejudicial" and "would constitute no proof * * * of any of the elements of the crime * * * charged or any proof of the transaction between the defendant and Lonnie Branscum."

If by this argument defendant contends that the challenged evidence was incompetent because it tended to prove independent crimes, the answer is found in 6 CJS 756, Arson § 33, where it is stated:

"The fact that accused a few months before the burning had requested another to burn the building is admissible in evidence, and where accused is charged with having procured another to commit the illegal burning charged, evidence that sometime previous he had attempted to hire such other to burn the property is admissible although such attempt was unsuccessful and the actual burning was induced by threats."

In *People v. Kerns,* supra, at page 114, the court held:

"* * * It is the law that when the conduct of an accused person in a previous offense bears such similarity in significant respects to his behavior at the time of the commission of the crime under investigation 'as naturally to be explained as caused by a general plan, the similarity is not merely coincidental but indicates that the defendant's conduct was directed by design.'"

This assignment of error, therefore, is without merit.

■ Under assignment of error No. 3 defendant challenged the introduction into evidence of a certain bank check, exhibit H, on the ground the exhibit is a photostatic copy of the check, claiming such exhibit

to be secondary evidence without a showing having been made why the original could not be produced. The check was a cashier's check drawn by an Oklahoma bank. Defendant cites ORS 41.610 and 41.640, but overlooks ORS 41.720, which provides as follows:

"Any photostatic, microphotographic or photographic reproduction of a writing, book entry or record made on film in the regular course of any business as a memorandum or record of an act, transaction, occurrence or event, whether made at or near the time of the act, transaction or event or made subsequently, prior to the time of destruction or removal of the original records, shall be admissible in evidence in place of the original. The reproduction shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and if it is the practice of that business to make and keep such reproductions to replace original memoranda, records or documents."

In the instant cause exhibit H is a photostatic reproduction of a record made on film in the regular course of business as a memorandum or record by the Douglas County State Bank which cashed the check in question and which film was made before the removal of the original record to the Oklahoma bank. Included in the film was the check in question. Likewise, the custodian of the record testified as to the identity of the reproduction, and that it was the practice of the local bank to make and keep such a reproduction to replace original memoranda. Therefore, the ground of objection directed to exhibit H, that it is a photostaic copy, is not sustainable.

Furthermore, prior to the introduction of exhibit H the entire contents thereof were made known to the jury without any objection on the part of defendant. The exhibit was a record in writing merely re-

peating evidence that had already been introduced in the record without objection.

Defendant's third assignment of error is without merit.

Since the record in the instant cause is free from any indication of reversible error, the judgment must be and is affirmed.