[Crim. No. 5762. In Bank. Dec. 16, 1955.]

THE PEOPLE, Respondent, v. ALAN KENT GORG,
Appellant.

Dennis L. Woodman for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant appeals from an order granting him probation and an order denying his motion for a new trial entered after he was found guilty by a jury of one count of possessing marijuana (Health & Saf. Code, § 11500) and one count of planting and cultivating marijuana. (Health & Saf. Code, § 11530.)

Defendant, a 23-year-old law student, occupied a room with a bath in the home of Don Stevens in Menlo Park in exchange for doing the gardening. On Saturday evening,

February 19, 1955, he was arrested on a charge of shoplifting. He admitted the taking of the articles for which he had been arrested, but denied that he had taken anything else. The interrogating officer, Inspector Kieler, testified that he requested and received defendant's permission to search his room. That night the officer went to the Stevens residence and was admitted by Stevens. He made a brief search of defendant's room, found no stolen articles, and departed. On the following Sunday afternoon Stevens telephoned defendant's father in Hollywood and suggested that he come at once to Menlo Park. In making defendant's room tidy for defendant's father to occupy, Stevens found a bucket containing growing plants in defendant's bathroom. He removed the bucket and contents to the service porch.

Meanwhile, the police had obtained a "rap sheet" on defendant and learned that he had been arrested and then released on two occasions involving narcotics. Inspector Kieler returned to the Stevens residence on Monday morning, February 21st, and was shown the bucket by Stevens. Analysis proved that it contained growing marijuana. That evening several officers arrived at the house. They had no search warrant, but Stevens gave them permission to enter and requested that they search the entire house. Accompanied by Stevens and defendant's father, the officers entered and searched defendant's room. In one bureau drawer they found drying marijuana plants, marijuana seeds, and fertilizer. They found more seeds in another drawer and more fertilizer and paper used to roll cigarettes in a desk, and a heat lamp in the clothes closet.

■ Before the trial defendant made a motion for the appointment of a narcotics expert to be paid by the county. He contends that the denial of this motion on the ground that he was able to pay for his own expert was error. He argues that since the court had previously appointed counsel, the question of his ability to pay for any assistance was res judicata, and that the only question for determination on the motion was the amount to be authorized for "necessary expenses."[1] Defendant, however, was out on bail and able to work. A period of more than a month remained before

---

[1]Defendant invoked section 987a of the Penal Code in support of his motion. That section reads: "In any case in which counsel is assigned in the superior court to defend a person who is charged therein with a crime, . . . such counsel . . . shall receive a reasonable sum for compensation *and for necessary expenses,* the amount of which shall be determined by the court." (Italics added.)

trial in which he might earn $50, the estimated fee of the expert. Under such circumstances the motion was properly denied. ■ Moreover, section 1871 of the Code of Civil Procedure provides: "Whenever it shall be made to appear to any court . . . that expert evidence is, or will be required . . . such court . . . may . . . appoint one or more experts to investigate and testify at the trial. . . ." The appointment of experts under this section rests in the discretion of the court (*People* v. *McCracken*, 39 Cal.2d 336, 350 [246 P.2d 913]; *People* v. *Rickson*, 112 Cal.App.2d 475, 479 [246 P.2d 700], and cases cited therein), and no abuse of discretion has been shown here. Defendant did not advise the court as to the type of expert that was required .or what he might produce. Furthermore, he had full opportunity to cross-examine the state's experts, and he produced an expert botanist of his own.

· At the trial defendant testified that he found the bucket containing the plants in Stevens' backyard, that the plants looked as if they were dying, that he thought they belonged to Stevens and since Stevens was not home, he had brought them inside to care for them. He denied any knowledge of the nature of the plants. ■ "In order to sustain a conviction of possession of narcotics it must be shown that the defendant had either physical or constructive possession, and that he was aware that the substance of which he had possession was a narcotic." (*People* v. *Candiotto*, 128 Cal.App.2d 347, 352 [275 P.2d 500], quoting from *People* v. *Walker*, 121 Cal.App.2d 173, 174 [262 P.2d 640].) ■ Awareness that the plant was a narcotic must likewise be shown to sustain a conviction of planting and cultivating marijuana. The drying leaves, seeds, fertilizer, papers, and lamp, found during the search of defendant's quarters, were admitted into evidence over his objection that they had been illegally seized. Since that evidence played a substantial part in establishing defendant's knowledge of the nature of the growing plants, the controlling question in this case is whether it was legally obtained.

■ Defendant contends preliminarily that the trial court erred in determining the question of the admissibility of this evidence outside the presence of the jury and in not submitting it to them. The procedure adopted by the trial court was proper, for the admissibility of the evidence presented a question of law for the court. (Code Civ. Proc., § 2102; *Steele* v. *United States*, 267 U.S. 505, 511 [45 S.Ct. 417, 69 L.Ed. 761]; *Boyer* v. *United States*, 92 F.2d 857, 858; *Marsh*

v. *United States,* 29 F.2d 172, 173; *United States* v. *Jankowski,* 28 F.2d 800, 802; *Pritchett* v. *State,* 78 Okla. Crim. 67 [143 P.2d 622, 624-626]; *State* v. *Wills,* 91 W.Va. 659 [114 S.E. 261, 266, 24 A.L.R. 1398]; *contra, Compton* v. *State,* 148 Tex. Crim. 204 [186 S.W.2d 74, 76].) ▮ Defendant urges, however, that the same procedure should be followed as in the case of a confession, where the trial court initially determines the question of admissibility and then instructs the jury to disregard the confession if they find that it was not freely and voluntarily made. The rule of the confession cases is justified by the fact that the jury must necessarily be informed of the circumstances surrounding the confession properly to evaluate it. ▮ The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue. ▮ Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt (*People* v. *Boyles, ante,* p. 652 [290 P.2d 535], and cases cited), evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure.

▮ The attorney general contends that it is not unreasonable to search a man's dwelling after having arrested him some other place for a crime involving theft. Even if the object of the search was to recover other stolen articles, it was not incidental to the arrest, for it was at a distance from the place thereof and was not contemporaneous therewith. (*Agnello* v. *United States,* 269 U.S. 20, 30, 31 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]; *People* v. *Conway,* 225 Mich. 152 [195 N.W. 679, 680]; *Fowler* v. *State,* 114 Tex.Crim. 69 [22 S.W.2d 935, 936]; *cf.* 5 Salsbury's Statutes of England [2d ed.] 744, 1070.) ▮ Furthermore, in this case a previous search had already been made, and the second search was made some 48 hours after the arrest, after the "rap sheet" had been obtained, and after the contents of the bucket found on the service porch had been analyzed. The conclusion is inescapable that the second search was not made to recover other stolen articles, and that it had no reasonable relation to defendant's arrest. (*Elliott* v. *State,* 173 Tenn. 203 [116 S.W.2d 1009, 1012, 1013].)

Defendant's main contention is that he did not consent to the search of his room. ■ One can, of course, freely consent to the search of his property, and having done so, "any search or taking of evidence pursuant to his consent is not unreasonable. [Citations.] ■ Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority is a question of fact to be determined in the light of all the circumstances." (*People* v. *Michael, ante,* p. 751 [290 P.2d 852].)[2] ■ We said in *People* v. *Boyles, supra, ante,* p. 652 [290 P.2d 535], in reference to an arrest without a warrant, that "[s]ince the court and not the officer must make the determination whether the officer's belief is based upon reasonable cause, the officer must testify to the facts or information known to him on which his belief is based." ■ Similarly, where consent to search is claimed by the People, evidence must be presented that will enable the court to determine for itself whether consent was in fact given. ■ When the People seek to justify a search on the ground that consent thereto was given, they have the burden of proving consent. (*United States* v. *Reckis,* 119 F. Supp. 687, 694; *Judd* v. *United States,* 190 F.2d 649, 651; *Ray* v. *United States,* 84 F.2d 654, 656; *United States* v. *Slusser,* 270 F. 818, 819; *United States* v. *Novero,* 58 F.Supp. 275, 281.) The only evidence presented by the People bearing on the issue of consent was the testimony of Inspector Kieler that he had defendant's permission to search his room, but under the facts and circumstances related therein,[3] it is doubtful whether the officer was justified in concluding that

[2] A circumstance of particular significance is a defendant's custody at the time of the request for his permission to search, for where he has submitted to arrest, or is in jail, he knows that he is virtually powerless to prevent the search. (*United States* v. *Alberti,* 120 F.Supp. 171, 174; *United States* v. *Reckis,* 119 F.Supp. 687, 694.)

[3] On direct examination Inspector Kieler testified that after he had taken defendant to jail he secured his permission to search his room. On cross-examination he was asked to relate what defendant said when asked whether he was willing to have the officers search his room for other articles that might have been stolen. He answered:

"Well, I don't know word for word, but I do know that he definitely did not object. He said yes, that I have his permission to go in and search.

"Did he use those words, 'Yes, you have my permission?'

"I wouldn't say he did, no. I don't know what his words were, but I do know I was given his permission at that time.

"In other words, the gist of your testimony is that you concluded, as a result of what he said, that you had permission, is that correct?

"That is true.

"But you cannot tell this court exactly what was said so the court

defendant had freely consented to the search of his room or whether such consent, if given, included consent to repeated searches or was limited to the first search for other stolen articles. Thus, if that issue were crucial it is doubtful whether the People sustained their burden of proving that defendant freely consented to the searches of his room. We have concluded, however, that under the facts of this case his consent was not necessary.

 Defendant was living in the Stevens home, and it is clear that whether he was in fact a tenant, servant, or guest, Stevens believed that he had at least joint control over his quarters and the right to enter them, put them at the disposal of defendant's father, and authorize a search thereof. Under these circumstances the officers were justified in concluding that Stevens had the authority over his home that he purported to have, and there was nothing unreasonable in their acting accordingly. In this proceeding we are not concerned with enforcing defendant's rights under the law of trespass and landlord and tenant, but with discouraging unreasonable activity on the part of law enforcement officers. "A criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to rule." (Mr. Justice Stone in *McGuire* v. *United States*, 273 U.S. 95, 99 [47 S.Ct. 259, 71 L.Ed. 556]), and when as in this case the officers have acted in good faith with the consent and at the request of a home owner in conducting a search, evidence so obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner's authority. (See *People* v. *Cahan*, 44 Cal.2d 434, 442 [282 P.2d 905], footnote.)

The orders are affirmed.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., Spence, J., and McComb, J. pro tem.,* concurred.

---

can determine for itself whether you had or had not been granted permission, is that also correct?

"Not word for word, no, I can't."

Defendant testified as follows as to what he said: "Well, the Inspector asked me if I objected to his going out to the house, and I said that I didn't think there was much way I could object." On cross-examination defendant testified, "I said, 'I don't see how I can object,' seeing as he called up Don Stevens and said he would be out, that he would be coming out." The court then ruled "At this time I am going to allow the evidence. The objection will be overruled."

*Assigned by Chairman of Judicial Council.