[Crim. No. 3365.   First Dist., Div. One.   Dec. 16, 1957.]

THE PEOPLE, Respondent, v. EARL HENRY THOMAS, Appellant.

Racanelli, Duvaras & Warren for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Tried before the court, without a jury, and convicted of violating section 11500 of the Health and Safety Code (possession of heroin) defendant in support of his appeal claims that certain evidence essential to the conviction was illegally seized and therefore improperly admitted in evidence by the trial court.

He was arrested December 15, 1955, in a public card room in San Jose and immediately taken to the city police detective bureau where he was searched by the arresting officers, McKenzie and Bishop. Fourteen capsules of heroin, a multicolored balloon and part of an orange colored balloon were found upon his person.

After booking the defendant, these two officers went to defendant's hotel room, where they found a capsule box containing three pieces of rubber band, the tops from two balloons and a piece of cotton; also, a piece of red balloon and five red balloons. There is evidence that rubber bands and balloons such as these are used by dispensers of heroin, typical paraphernalia of a dealer or seller of narcotics.

(1) *Was there a legal basis for the arrest of defendant and the search of his person without a warrant? Yes.*

The arresting officers worked as a team, pooling their information. In the latter part of September, 1955, an informer who had given reliable information upon previous occasions told Officer Bishop that a person known as "Red" or "Big Red," whom the officers later learned was Frank Lantron, and an associate of "Red," were gamblers and were trafficking in narcotics. The informant described "Red's" associate as a man, 40-45 years old, 5 feet 10 inches, 160-170 pounds, who combed his hair straight back close to his head and never to the informant's knowledge wore a hat, adding that both "Red" and the latter's associate peddled narcotics, in particular heroin, on Post Street from different gambling establishments there. Bishop went to a certain hotel to check on a person who was of Lantron's description, but Lantron was not living there at that time. Bishop had no immediate means of identifying the associate, so he filed the information. Bishop first saw Lantron during the latter part of November,

identifying him as "Red" but not knowing his name yet.

On the morning of December 14, McKenzie and Bishop took a point of observation in the second story of a building near the intersection of Post and Lightstone, using binoculars to aid their observations. They saw "Red" walking along the street back and forth from place to place and had him under surveillance for at least half an hour. Upon one occasion "Red" crossed the street and talked to a person who answered the informant's description of "Red's" associate, the defendant in this case.

The officers ascertained the hotel where "Red" was now residing, went to the hotel and made inquiries of the hotel clerk, who told them that Lantron was familiar with Thomas, that they had gone out with each other, that they were seen in the company of each other, that they both were apparently gamblers, that they had both lived there (occupying separate rooms) and that when defendant moved out Lantron moved into the room defendant had been occupying.

The next morning the officers, informed that Lantron always carried narcotics when he came out of his hotel into the street, arrested Lantron as he left the hotel. They found heroin upon him. They then searched his room, finding marijuana and implements used in dispensing marijuana but no heroin and no implements used in the sale or application of heroin. The officers inferred that Lantron had a partner or associate who kept the supply of heroin and the equipment for its preparation for sale and that defendant was the logical suspect as such partner or associate.

We conclude that from the information received by Bishop in September and by both officers from the hotel clerk in December and the observations which the officers made, they had reasonable cause for believing that defendant was unlawfully engaged in the narcotic traffic and that they thus had a legal basis for arresting him without a warrant and searching his person.

(2) *Was the search of defendant's person reasonable and the evidence obtained admissible? Yes.*

There would be no doubt of the legality of the arrest and search without a warrant and the admissibility of the evidence seized if upon arresting him the officers had told defendant the real "cause of the arrest" (Pen. Code, § 841), the officers' belief that he was trafficking in narcotics. Instead, Officer McKenzie, after identifying himself, told defendant he was

wanted in San Luis Obispo, that he should accompany them to headquarters, which he did. Defendant did not ask to see the warrant. The officers had none with them.[1]

The law clearly contemplates that when an arrest is made in obedience to a warrant the officer should have the warrant with him. (Pen. Code, § 816, warrant may be executed by any officer to whom it may be "delivered"; § 842, arresting officer "must show the warrant, if required.")[2]

This presents a situation somewhat like that presented in *People* v. *Wright,* 153 Cal.App.2d 35 [313 P.2d 868]. There, the deputy sheriff was informed of the warrant and of its presence in another branch of the sheriff's office and arrested the defendant without first getting possession of the warrant. However, he had independent grounds for the search of the automobile in which he found the defendant. Through the window of the car he saw clothing which was of such an appearance that, with other observable circumstances, gave him reasonable cause to believe it had been stolen from a haberdashery, and thus legally justified the search.

Here, the officers had independent grounds for the arrest and search of the person,—reasonable cause to believe defendant was committing a felony. The technical shortcoming of the conduct of the arrest should not, under the circumstances of this case, destroy the evidentiary value of the heroin found upon defendant's person. It has been held that opening a door to make an arrest without "having demanded admittance and explained the purpose for which admittance is desired" (Pen. Code, § 844) does not render inadmissible the evidence obtained, if otherwise there be a legal basis for the arrest. (*People* v. *Maddox,* 46 Cal.2d 301, 306-307 [294 P.2d 6]. See also *People* v. *King,* 140 Cal.App.2d 1, 9 [294 P.2d 972].) The reasoning of those cases persuades us that here

---

[1]There was outstanding a warrant from the Justice Court, San Luis Obispo, for the arrest of this defendant, for failure to pay a fine that had been imposed in a misdemeanor case. That warrant, upon this occasion, was in the possession of another police officer who was working out of the same office as McKenzie and Bishop.

McKenzie knew about the warrant from a "want card" in the city identification bureau, a card based upon a teletype that had been received which gave notice of the warrant for defendant's arrest. He received the teletype from the identifying officer shortly before making this arrest. Bishop also knew about the San Luis Obispo warrant and had seen the teletype and the "want card" before the arrest.

[2]We find it unnecessary to decide whether an arrest in obedience to a warrant is ineffective, in whole or in part, if the arresting officer lacks possession of the warrant when making the arrest.

the failure to comply with similar provisions of section 841 of the Penal Code did not render the search unreasonable nor the heroin found upon his person inadmissible.

There is an additional reason why this particular arrest should be deemed valid. The defendant was at the very moment of the arrest "engaged in the commission of . . . an offense" (possession of a narcotic, heroin, in violation of Health & Saf. Code, § 11500), thus bringing his arrest squarely within the scope of the exception unequivocally declared in section 841, the very section which defendant invokes: ". . . except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense . . ." (As the section read prior to the 1957 amendment; i.e., as enacted in 1872.) Significantly, the evidence shows that the officers had reasonable cause to believe and did believe that defendant was at the very moment of his arrest engaged in the commission of a crime, carrying narcotics upon his person.

A precedent for this interpretation and application of the exception quoted is furnished by *People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29]. A marijuana cigarette was found concealed in defendant's car and some brown cigarette papers in one of his pockets. It was presumed that the officers had reasonable cause to believe that he was engaged in the commission of a felony, the appeal record being completely silent on that question. These factors brought the case within the scope of the exception declared in section 841 of the Penal Code. (See also *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36] [defendant "taken into custody while apparently engaged in the commission of an offense"]; and *People* v. *Jaurequi,* 142 Cal.App.2d 555, 562-563 [298 P.2d 896] [arrest of narcotic addict, the officer having reasonable cause to believe him an addict, is within the exception].

We conclude that the heroin found upon defendant's person was legally admitted in evidence.[3]

██ (3) *Was there a legal basis for the search of defendant's hotel room and the admission in evidence of the paraphernalia there found and seized? Yes.*

The evidence supports an implied finding that defendant freely consented to the search of his room.

---

[3]Note is made of the fact that defendant asked the name of Officer Bishop's informant and an objection that such information was confidential was sustained, but that ruling was not made the basis of defendant's motion to exclude or strike any of the evidence from the record.

Officer Bishop testified that he got defendant's permission before he went to the room, adding that "we asked the Defendant. In fact, we told him we would like to take a recording of his answers and the questions that we asked in regard to searching of the room, which we did. He was informed of the recording. The disc was placed on the machine at the time in front of the defendant. We asked for his permission, recorded the question and his answer that was given which he agreed to let us search his room." Defendant knew that this conversation was being recorded. He made no objection whatsoever to the making of this search. He had not yet been booked when the officers made this request but he was still in the custody of Bishop and McKenzie at the police station.

Defendant tendered no evidence of any kind on this issue. Moreover, when the prosecution asked and the court granted permission to play the record of the making and granting of the request for permission to search the room, defendant's counsel stipulated "that the records substantiate what the officers testified to concerning this matter of consent." The prosecutor accepted this stipulation and refrained from playing the record.

Manifestly, there is no basis here for a reviewing court to disturb the trial court's implied finding that defendant freely gave his consent to the search of his room; nor to disturb the ruling that the paraphernalia found in the room was admissible in evidence. (See *People* v. *Michael*, 45 Cal.2d 751, 753-754 [290 P.2d 852]; *People* v. *Gorg*, 45 Cal.2d 776, 782-783 [291 P.2d 469].)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.