[Crim. No. 7752.   Second Dist., Div. Four.   Apr. 20, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST HUNT, Defendant and Appellant.

Chandler & Duncan and Elinor Chandler for Defendant and Appellant.

Stanley Mosk, Attorney General, Elizabeth Miller and Samuel L. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County defendant was charged with illegal possession of marijuana in violation of section 11500 of the Health and Safety Code. Defendant pleaded not guilty. Trial was by the court, trial by jury having been duly waived by defendant personally and by all counsel. Pursuant to stipulation of defendant and counsel the cause was submitted to the court on the testimony contained in the transcript of the proceedings had at the preliminary hearing, and both sides reserved the right to produce additional testimony.

At the commencement of the trial the judge indicated for the record that he had read and considered the evidence produced at the preliminary hearing. No additional evidence was offered on behalf of the People. The defendant offered two witnesses in his behalf, James Adams and Walter Wheeler, and he (the defendant) also testified. Defendant was found guilty as charged. A probation report was ordered and defendant's motion for a new trial was denied. Probation was denied and defendant was sentenced to the state prison for the term prescribed by law.

On November 6, 1960, George W. Barber, a police officer for the City of Los Angeles, assigned to the narcotics division, and his partner, Sergeant Garrahan, arrested Walter Wheeler on an indictment charging the sale of marijuana. At the time of his arrest Wheeler had marijuana cigarettes in his possession. He told officers Barber and Garrahan that he had been purchasing his marijuana from a person he knew as Hunt, and that he had been going to 237 West 46th Street, Los Angeles. The officers went to the records division and found that there was a felony warrant outstanding for a person named Hunt on a charge of sale of narcotics. The officers stated it was a John Doe warrant.

The officers testified they staked out the house, and on November 14, 1960, they observed two persons get out of an automobile and enter the house. These two persons stayed about five or six minutes and then left. The officers followed them. Some distance away, they stopped and interrogated them. Both persons denied having been at 237 West 46th Street. The officers checked the records division and found that both persons had felony records.

On November 16, 1960, while the officers were again staked out, a car occupied by three persons drove up. James Edward Adams, one of the persons, ran into the house at 237 West 46th Street and stayed approximately four or five minutes. He came out, got into his automobile and left. The officers followed the automobile to 46th and Main and arrested Adams, who had benzedrine in his possession. Adams stated that Ernest Hunt lived at 237 West 46th Street, and that he had not purchased the benzedrine at the address. Although he stated that he did not go to 237 West 46th Street to buy marijuana and that "he did not see any" on that day, Adams said that he had seen Ernest Hunt with marijuana previously.

After taking Adams to the narcotics division, the officers returned to 237 West 46th Street, and Officer Barber went to the front door. Officer Garrahan stayed back in the driveway while Officers Buckner and Leeds were at the rear door. Officer Barber knocked on the front door, and it was opened by defendant who stepped back into the room with Officer Barber following him. Officer Barber went to the back door and let the other officers in. When asked if he had any narcotics or marijuana in the house defendant said: "No." Officer Barber then told him, "We understand you have been selling it from here and that you have marijuana. If you have any, get it for us." Defendant then went to the refrigerator, got numerous red capsules which were in a large jar and said, "This is all I have." Officer Barber asked defendant if he had a prescription for that and he said he did not. Officer Barber had been to court numerous times on the identical type of evidence bottled in the same way and felt quite certain that the capsules were seconal. He handcuffed the defendant and informed him that he was under arrest. The arrest was made for possession of the red capsules.

The officers searched the premises and found 46 rolled cigarettes, seeds and debris in a hatbox under the bathtub, two newspaper-wrapped packages containing green leafy material, resembling marijuana in the front bedroom under the mattress, and a jar of red and white capsules.

L. B. Miller, a forensic chemist assigned to the scientific investigation division, testified that after a chemical and physical examination of the cigarettes and leafy material and debris, he had formed the opinion that it all contained parts of the plant *cannabis sativa,* more commonly known as marijuana.

Walter Wheeler testified on behalf of defendant. He stated

he got marijuana, found in his possession at the time of his arrest, from a friend but that he did not know defendant.

Defendant testified in his own behalf to the effect that on the day he was arrested someone knocked at his door and asked, ''Are you Mr. Hunt?'' Defendant said ''Yes.'' When the person at the door said ''Police officers,'' defendant said ''Come on in.'' One of the officers said ''You are under arrest.'' Another officer said ''You have been found guilty of marijuana in the house.'' Defendant answered, ''I don't have any marijuana.'' The officer said, ''Are you going to give it to us?'' Defendant further testified that he sat in the living room while the officers then proceeded to search the house. One of the officers came from the kitchen with a bottle of pills in his hand. The officers said that a roll of cigarettes was found under the bathtub and showed it to defendant. Defendant went into the bedroom and while he was there, the officers found two or three packages under the mattress.

Defendant's only contention for reversal is that the evidence was obtained by illegal search and seizure.

Admittedly the officers had no search warrant for the arrest of defendant or a warrant for search of his premises. Penal Code section 836 provides in part: ''A peace officer . . . may without a warrant, arrest a person: . . . 2. When a person arrested has committted a felony, although not in his presence. 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.''

''Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] . . . The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.] Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest. [Citations.]'' (*People v. Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

Defendant testified the entry of his house was made

by the officers after he told them to "Come in." There is no evidence of any force being used and the court was justified in drawing the inference that the consent was voluntarily given.

As stated in *People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] : "Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiry, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority."

As stated in *People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469] : "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority is a question of fact to be determined in the light of all the circumstances . . . . '[s]ince the court and not the officer must make the determination whether the officer's belief is based upon reasonable cause, the officer must testify to the facts or information known to him on which his belief is based.' "

In the case at bar, upon entry the officers advised defendant that they had information that he had marijuana and that if he had any to get it for them. Defendant produced a jar of pills saying "This is all I have." The officers believed the pills to be narcotics, placed the defendant under arrest and then searched the premises. The trial court properly concluded that the arrest was lawful. Thereafter, they searched the premises. Under defendant's version, the search commenced after he was told he was under arrest, and it was the officer and not the defendant who removed the pills from the refrigerator. The trial court resolved this conflict in testimony in favor of the officers.

The trial court properly concluded that the arrest was lawful. Thereafter, the officers searched the premises. They found 46 rolled cigarettes, seeds, debris, two newspaper-wrapped packages containing green leafy material, which a forensic chemist identified as containing *cannabis sativa* or marijuana.

The evidence found in the search of defendant's house was incidental to his arrest. "The search of the premises followed as an incident to the arrest. If there was prob-

able cause for the arrest both the arrest and the search were lawful. The evidence found there was seized as part of a lawful search and was not therefore illegally obtained. Here, there was evidence independent of that revealed by the search to justify the arrest.'' (*People* v. *Fischer*, 49 Cal.2d 442, 447 [317 P.2d 967].)

Judgment and order denying the motion for a new trial affirmed.

Burke, P. J., and Balthis, J., concurred.