[Crim. No. 8751. Second Dist., Div. Three. Mar. 6, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER RAYFIELD FRANK, Defendant and Appellant.

Donald W. Boehme for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—The defendant was accused of the crime of possession of marijuana. (Health & Saf. Code, § 11530.) In a nonjury trial he was found guilty. He has appealed from the judgment (order granting probation).

The sole question presented on this appeal is whether the marijuana was found and seized by the police officers as the result of conduct which constituted an unlawful search and seizure. The pertinent evidence will be stated.

Uluse E. Schubach, a police officer for the City of Los Angeles, arrested the defendant at his place of residence on April 11, 1962. Within a period of approximately two weeks prior to that time, the officer had been at the location of the house several times. He had received information from his superior officer that there was "a narcotic activity" at that address. The superior officer had received the information from Inspector Kerr, but Officer Schubach did not know where Kerr obtained that information. He knew that the telephone was in the name of Rosemary Day. An automobile in the vicinity was registered to "Mildred or Frank Walter Wallace." The only information which the officer had as to the defendant was that on the 9th day of February a "Frank Walter" had been arrested "for pills." But the officer did not know whether the person so arrested was the defendant.

Officer Schubach and three other officers, all in civilian clothes, went to the house on the day of the arrest. In response to Officer Schubach's knock, a small boy came to the door. The boy called his mother. Officer Schubach identified himself and Mrs. Rosemary Day told him to come in. He informed her that he was making an investigation as to narcotics. Mrs. Day gave him the names of the roomers in her house, stating that Walter Frank was in room 5. She further told the officer that she did not know whether she had the right to give him permission to search the rooms. She phoned her "boy friend" and then said, "Well, he said it's all right, so I'll take you upstairs."

Officer Schubach went to room 5 with Mrs. Day and Sergeant Loeber. Mrs. Day knocked on the door and informed the defendant that there were men present who wished to see him. The defendant opened the door and, after Officer Schu-

bach identified himself as a police officer, the two men entered the room. The defendant stated that he was Doug Belmont and not Frank. The officer asked where Frank was and the defendant replied that he had gone to the market and would be back in a little while. Officer Schubach then said that the officers had information as to activity in the house with respect to narcotics and that Mrs. Day had given them permission to search the premises for narcotics. The defendant said, "Go ahead," and the officers started their search. Marijuana was found in a closet. Thereupon the defendant admitted that he was Frank. Then the defendant said, "Where is your search warrant?"

On cross-examination Officer Schubach testified that he did not learn that some of the rooms in the house were rented to roomers until after the search of the premises, pursuant to Mrs. Day's permission, had commenced. When she told Officer Schubach that Walter Frank "owned the car out there" and that he lived in room 5, the officer went directly to that room. Mrs. Day and Sergeant Loeber accompanied him. Mrs. Day knocked on the door and asked, "Frank, are you in there?" The occupant of the room replied, "Yes." After the defendant opened the door, the officers identified themselves. Officer Schubach further testified that he "pointed to Mr. Frank, the defendant, and Rosemary [Mrs. Day] nodded her head that it was him." Then Officer Schubach entered the room. He asked the defendant who he was and thereafter, before a search was commenced, he asked him if he could have permission to search the room.

Rosemary Day, whose name was Mrs. Vail at the time of the trial, testified on behalf of the defendant. She gave the officers permission to search the house. When the defendant opened the door to his room, the officers entered. She heard an officer ask the defendant for permission to search his room. About five or ten minutes after the officers entered the room the defendant made "quite a point of the fact that he wanted a search warrant." But Mrs. Vail was uncertain as to what occurred when the officers first entered his room. At the time she had three or four roomers, each having a separate room. The rooms were furnished. They were cleaned and maintained by their occupants.

The defendant testified in his own behalf. He was taken into custody in February on an occasion when he was driving an automobile which had "two rolls of Benzedrine tablets in it," but he was later released. The automobile parked near

his house on April 11, 1961, was registered in the names of Mildred Wallace and Walter Frank. On that day, Officer Schubach and two other officers came into his room. He said that he was not Frank. When Officer Schubach asked him for some identification, the defendant asked the officer for a search warrant. He then told the officer that he was Frank but that he wanted a search warrant. Officer Schubach replied that he did not need a search warrant, that he had been given permission by Rosemary Day. As soon as the defendant opened the door, the officers started searching the room. They were searching "all the time" that he was asking for a search warrant.

The defendant objected to the introduction in evidence of the marijuana found in the search of his room. In the course of the argument made by the defendant's counsel, the trial judge stated: "It is my opinion there is consent in this case by the landlord."[1] The objection was overruled.

Prior to the search of the defendant's room, the officers did not have reasonable or probable cause to arrest the defendant for possession of marijuana. (See *People* v. *Harvey*, 156 Cal.App.2d 516, 520-521, 523-524 [319 P.2d 689].) The admissibility of the marijuana must rest upon a determination of the question of whether there was an effective consent to the search of the defendant's room. The record discloses that the trial judge made no determination as to whether the defendant consented to the search but found that the consent of Rosemary Day was all that was necessary. If that concept of the governing law was erroneous, the judgment must be reversed because there was conflicting evidence as to whether the defendant consented to the search. ■ Where the trier of fact has not considered an issue upon which there is a substantial conflict in the evidence, this court cannot affirm the judgment upon the assumption that consideration thereof would have resulted in a finding in favor of the People. (See *Healy* v. *Brewster*, 59 Cal.2d 455, 464-465 [30 Cal.Rptr. 129, 380 P.2d 817]; *Kyne* v. *Kyne*, 60 Cal.App.2d 326, 332 [140 P.2d 886].)

In *People* v. *Gorg*, 45 Cal.2d 776, the Supreme Court stated, at page 783 [291 P.2d 469]: "Defendant was living in the Stevens home, and it is clear that whether he was in

---

[1] At an earlier point in the course of the argument, the trial judge stated: "I think the landlady has a right to give a consent there, whether it is a boarding house or an apartment house. She has an overriding consent. The law is pretty clear on that."

fact a tenant, servant, or guest, Stevens believed that he had at least joint control over his quarters and the right to enter them, ... and authorize a search thereof. Under these circumstances the officers were justified in concluding that Stevens had the authority over his home that he purported to have, and there was nothing unreasonable in their acting accordingly. In this proceeding we are not concerned with enforcing defendant's rights under the law of trespass and landlord and tenant, but with discouraging unreasonable activity on the part of law enforcement officers, ... and when as in this case the officers have acted in good faith with the consent and at the request of a home owner in conducting a search, evidence so obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner's authority." In *People* v. *Caritativo*, 46 Cal.2d 68 [292 P.2d 513], similar circumstances were involved.

 Unlike the factual situations existing in the *Gorg* and *Caritativo* cases, the defendant in the present case was in his room at the time of the entry and search. Consequently, the problem is not what Mrs. Day's authority might reasonably have appeared to the officers to be had the defendant been absent from his room. The crucial defect in the reasoning of the trial court was the failure to recognize that the defendant, unlike a mere inanimate object in the room, was possessed of a substantial right of privacy with respect to his place of abode and was entitled to rely upon the constitutional protection against unreasonable search. As aptly stated by Mr. Justice Frankfurter in *Jones* v. *United States*, 362 U.S. 257, at page 266 [80 S.Ct. 725, 4 L.Ed.2d 697, 705, 78 A.L.R.2d 233] : "Distinctions such as those between 'lessee,' 'licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards."

 There was evidence which, if believed by the trier of fact, would have sustained an inference that the defendant, upon being confronted in his room by the officers, did not consent to the search but insisted that the officers first have a search warrant. His constitutionally protected right of privacy was not so under the control of the person from whom he rented the room that he could not personally assert it under the circumstances of this case. If he did not consent to the search, it was unlawful. (See *Tompkins* v. *Superior*

*Court,* 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113].) The trial court erroneously failed to determine that issue of consent.

The judgment is reversed.

Shinn, P. J., and Files, J., concurred.