[Crim. No. 4642. Third Dist. August 5, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JULIA CATHERINE MacINTOSH, Defendant and Appellant.

Stanley J. Gale, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Gordon F. Bowley, Deputy Attorneys General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendant Julia MacIntosh and a non-appealing co-defendant, Joyce Mills, were convicted of viola-

tion of Health and Safety Code section 11530 (possession of marijuana). Julia appeals from the order granting her probation.

The two defendants were occupants of the same five-room apartment. The apartment was so arranged that entry into Joyce's bedroom was through Julia's bedroom. Julia has two young children who also resided in the apartment with the two women.

At approximately 9:30 p.m. September 4, 1966, two Sacramento policemen assigned to the child neglect detail visited the apartment house for the purpose of investigating a complaint regarding the possible neglect of a child. They knocked at the door of the apartment occupied by Joyce and Julia and by Julia's two children. At the time the officers knew who the occupants were but they did not know whether the children were Joyce's or Julia's.

Joyce admitted the two officers when they identified themselves. She alone was in the apartment at the time. The part of the apartment which the officers could observe when they were admitted was messy and filthy. One of the officers, Sergeant Dart, was a prosecution witness. According to his testimony the following transpired: The officers told Joyce they wanted to talk with her. One of them did so. The other, Sergeant Dart, asked permission to examine the apartment. Joyce gave him permission. In the middle bedroom, which was Julia's, Dart observed what he believed to be marijuana on the floor. He decided to explore further. He found what he described later as a "brown stain or residue" on the carpet alongside the head portion of the bed. Thereafter on the floor at the other side and under the bed a corner of a shoe box top protruded. In the box top were a cellophane bag and a tea tin, which contained material later proved at the trial to be marijuana and marijuana seeds.

Dart had suspected from its odor that the brown carpet stain was marijuana. He scraped up the residue and took possession of it. At the trial, testimony of a chemical analysis confirmed the officer's suspicion.

Joyce was arrested and marijuana was found among her effects when she was booked. After the officers had learned that the middle bedroom was occupied by Julia, she, too, was arrested.

Each woman testified in her own behalf. Neither denied possession of marijuana. The sole issue raised was the validity of the search. Joyce denied categorically that she had given

the officers consent to search the premises, although she admitted she had given permission to them to enter for the purpose of talking with her about the child neglect complaint. In the first two contentions discussed below we will assume that consent by Joyce was given as shown by the testimony of Sergeant Dart.

## VALIDITY OF COTENANT JOYCE'S CONSENT TO THE SEARCH

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." (*Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548 [20 L.Ed.2d 797, 802, 88 S.Ct. 1788].)

Consent to a search by an *absent* cotenant but without defendant's consent has been held insufficient. (*People* v. *Shelton* (1964) 60 Cal.2d 740, 745 [36 Cal.Rptr. 433, 388 P.2d 665]; *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113].) Both of those cases involved consents given by absent cotenants to search premises on which the defendant sought to be charged and who did not consent was *present* at the time of the search. *People* v. *Frank* (1964) 225 Cal.App.2d 339 [37 Cal.Rptr. 202] held ineffective a consent by the landlady of a defendant *present* at the time of the search who refused consent. *People* v. *Cruz* (1964) 61 Cal.2d 861, 866-867 [40 Cal.Rptr. 841, 395 P.2d 889], involved the search of an apartment in which defendant and a woman, Ann, were staying as guests of two other women. At the time of the search of the apartment (without a warrant) defendant Cruz and Ann, and Susan, one of the tenants, were present. The officer asked if they minded if he looked around. The two women said, "No. Go ahead." Defendant remained silent. Defendant's suitcase was searched and the contraband found therein. It was held that since defendant had given no consent, express or implied, to a search of his personal belongings, the search was invalid. The cases referred to above are cited by appellant as authority for her argument that the consent here was invalid.

The contention of an illegal search, however, under facts indistinguishably analogous to the case before us has been rejected. In *People* v. *Smith* (1966) 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222], a cotenant (Mrs. Walker) who was also a codefendant gave a voluntary consent to the

officers to search a home occupied jointly by her paramour (defendant Smith) and herself. The search made pursuant thereto in Smith's absence was upheld and the consent given was held valid. Under the circumstances described the court observed (on p. 799 of 63 Cal.2d) : "In these circumstances there is no impediment to invoking the rule that a search is not unreasonable if made with the consent of an occupant of the premises who, by virtue of his relationship or other factors, the officers reasonably and in good faith believe has authority to consent to their entry. [Citations.]" The *Shelton* and *Tompkins* cases, *supra,* are cited and distinguished. The basis of distinction is stated (also on p. 799) : "[T]hey dealt with situations in which one joint occupant, *away from the premises,* purported to authorize police officers to enter and search the premises over the express objection of another joint occupant *who was actually in the premises at the time.*" (Italics added.) (See also: *People* v. *LaPeluso* (1966) 239 Cal.App.2d 715, 729 [49 Cal.Rptr. 85].) Other cases could be cited; reference thereto is unnecessary.

Reasonability of the search under the facts of the case before us and reasonability of belief by the officers in the authority to Joyce to give consent under the circumstances described above (particularly when one considers the purpose for which the search was being made) is manifest.

### THE QUESTION OF THE CONSENT HAVING BEEN "UNINFORMED"

Defendant contends Joyce's consent was ineffective because she was not first advised she had the right to withhold consent. A federal court case, *Cipres* v. *United States* (1965) 343 F.2d 95, 97-98, is cited. It holds that for a waiver of a right to search to be effective it must reflect an "understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld." The views of this court have been expressed in *People* v. *Roberts* (1966) 246 Cal.App.2d 715, 728-729 [55 Cal.Rptr. 62] (hg. denied). Therein we agreed that a consent must be free and uncoerced, that a failure of the officers to advise the person giving the consent of his right to withhold consent is a factor to be taken into consideration by the trial court in making its determination whether a free consent was given.

When permission is sought from a person of ordinary intelligence the very fact that consent is given, however, carries

706

the implication that the alternative of a refusal existed. (Here Joyce seems to have been a person of ordinary intelligence.) We asserted in *Roberts* we were not convinced that a warning was indispensable. We declared the rules of *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], to be inapplicable. We have not changed our views. Warnings given before an extrajudicial admission or confession, and warnings given before accepting a consent to a search serve purposes and fulfill policies of the law which are not identical. (See also *People* v. *Chaddock* (1967) 249 Cal.App.2d 483 [57 Cal.Rptr. 582].)

Moreover, the conditions of the *Escobedo-Dorado-Miranda* rule were not here present. Defendant was not in custody. It was not contemplated when permission was sought that either Julia or Joyce would necessarily be taken into custody. Lastly, the search was not being made for contraband. Officers of the law had gained lawful admission to an apartment on a legitimate errand. They were investigating a child neglect complaint. One element of such an investigation is the condition of the premises in which the child is required to live. The officers upon their admittedly lawful entry had observed messiness and dirt. It was natural that they should ask leave to examine the rest of the premises, in fact, it was their duty to make the request. At the time they didn't even know that Joyce was not the mother of the allegedly neglected child. The fact that contraband was discovered was happenstance. The case is indistinguishable from one in which possession of contraband might be discovered in any other innocent manner, e.g., while agents of a fire marshal were, with the consent of a householder, inspecting premises for the possible presence of fire hazards.

### CONSENT AS A JURY QUESTION

 Sergeant Dart testified positively Joyce had given the officers permission to inspect the apartment. Joyce unequivocally denied she had given that consent. Practically considered, once the determination of the issue raised by that conflict in the evidence was made, the case was over. As stated, neither woman denied the possession of the marijuana, the ultimate issue of the case. Once discovery of the contraband was made, the prosecution's case was ironclad. Appellant argues that when the question of weighing the credibility to be given the testimony of Officer Dart opposed to the testimony of Joyce was taken from the jury both defendants were

denied a jury trial. It is true that question *was* taken from the jury. The court stated (in the presence of the jury) in reply to a motion by counsel to exclude the evidence obtained during the search: "[T]he officer testified that, thereafter, he asked if she minded if he looked around and she, according to his testimony, said they could, she didn't have any objection, 'Go ahead.' She denies that, so it is a question of fact for this Court to determine. The Court will elect to believe the officer in that regard." After additional discussion regarding the authority of Joyce to give the consent, the court added: "I am satisfied that we have a reasonable search and proper search and constitutional one. The Court so finds." No instruction was given that the jury could reweigh and override the court's determination. Effectually, the jury, therefore, would have understood the court's determination to be final and the court so intended. Its determination and action, however, contrary to appellant's contentions, followed settled law in California.

Dictum in *People* v. *Gorg* (1955) 45 Cal.2d 776, 780-781 [291 P.2d 469], has been frequently followed. (See *People* v. *Silva* (1956) 140 Cal.App.2d 791, 795 [295 P.2d 942]; *People* v. *Holmes* (1965) 237 Cal.App.2d 795, 797-798 [47 Cal.Rptr. 246]; *People* v. *Wozniak* (1965) 235 Cal.App.2d 243, 257 [45 Cal.Rptr. 222].) In *Gorg* the facts were similar to the facts in the case before us. Justification of a search and seizure were predicated upon an alleged consent. *Gorg* created no new rule. It declared (1) that questions of the admissibility of evidence were for the court to determine. In so stating it followed a statutory rule. (Code Civ. Proc., § 2102.) The court also stated (on p. 780 of 45 Cal.2d) that after the court had determined the admissibility of the evidence found as the result of search on the basis of the adequacy of the consent given the question should not be resubmitted to the jury.[1]

It has been stated that on the question of the *finality* of the court's determination of admissibility of foundation evidence pre-Evidence Code "statutes were silent on the point, and the case law was meager and confused." (Witkin, Cal. Evidence, (2d ed.) § 1082, p. 1002.)[2] The Evidence Code, in effect when

---

[1]The court in *Gorg* stated that since the question of the sufficiency of the consent was one exclusively for court determination, evidence relevant thereto was properly heard outside the presence of the jury. Here evidence of consent was taken (and discussion of the court's right to determine finally its sufficiency) with the jury present. We will discuss this hereinafter.

[2]It is stated by Mr. Witkin (*id.* p. 1002) "One theory distinguished

this case was tried, is more definitive. First new nomenclature is used. A fact upon the existence or nonexistence of which depends the admissibility or inadmissibility of evidence is called a "preliminary fact." (§ 400.)[3] "As used in this article, 'proffered evidence' means evidence, the admissibility or inadmissibility of which is dependent upon the existence or nonexistence of a preliminary fact." (§ 401.) Here, of course, the fruits of the search (marijuana and the possession of marijuana by Julia) is the "proffered evidence;" consent to the search is the "preliminary fact."

Section 310 takes the place of former Code of Civil Procedure section 2102. Section 310 provides that questions of law concerning the admissibility of evidence are to be decided by the court. Apropos the question we decide, section 402 is more explicit. With exception to be noted below, it states that the existence or nonexistence of a preliminary fact shall be determined by the court. Since it also provides that such evidence "may" be taken "out of the presence or hearing of the jury" and makes no provision for a subsequent repetition of the testimony in the jury's presence—and since (in subdivision (c) of said section) the ruling is given the effect of a finding it is clear that it is intended to be final.[4]

Sections 403 and 404 are exceptions to the rules of finality. Those sections define situations in which the court's determination of admissibility of the proffered evidence is NOT final and where the court may (and must upon request) instruct the jury itself to determine whether the preliminary fact exists and to disregard the proffered evidence unless *the jury* finds that the preliminary fact does exist. Section 404 relates wholly to questions of privilege. Section 403, subdivi-

---

between questions of competency (exclusively for the judge) and relevancy (redetermined by the jury)." There is no question of relevancy here.

[3] All section references hereinafter in this opinion are to the Evidence Code unless otherwise noted.

[4] Section 402 should be read with section 405. The latter section may be explained by reference to the "Comment" accompanying it. (Evid. Code, § 405, Comment.)

"Section 405 requires the judge to determine the existence or nonexistence of disputed preliminary facts except in certain situations covered by Sections 403 and 404 [hereinafter to be noted]. Section 405 deals with evidentiary rules designed to withhold evidence from the jury because it is too unreliable to be evaluated properly or because public policy requires its exclusion." Under the caption, "Function of court and jury under Section 405," People v. Gorg, supra, 45 Cal.2d 776, is cited as representing the type of situation where the determination by the court should not be referred to the jury. (§ 405, Comment.)

sion-(a), contains four other categories.[5] Neither the language thereof nor anything in the "Comment" describing the situations intended to be covered by section 403 (Witkin, Cal. Evidence (2d ed.) § 1082, p. 1003) indicates that preliminary facts offered as a foundation to justify the proffered evidence of the fruits of a search and seizure are included.[6]

Appellant cites *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], as authority for the proposition that ultimate determination of all "preliminary facts" must be by the jury. Jackson did not so hold. It held that *if* ultimate determination of the voluntariness *of a confession* was to be by a jury (and *Jackson* does not even hold that it must be), a preliminary determination of voluntariness must be made by the court (or inferentially some other safeguard adopted) to the end that a reliable ascertainment could be had that the jury had not based its guilty verdict upon a confession regarded to have been coerced but nevertheless truthful. Such a conviction, it was held, would violate the Fourteenth Amendment. This because coercion so taints a confession as to render its admissibility a violation of due process. *People* v. *Gorg, supra,* 45 Cal.2d 776, 781, while antedating *Jackson* by nine years, anticipated it, at least in part. It distinguishes "confession" preliminary facts from "search and seizure" preliminary facts. In the former, the court explains on page 781 of 45 Cal.2d, the rule of ultimate jury determination "is justified by the fact that the jury must necessarily be informed of the circumstances surrounding the confession properly to evaluate it. The probative value of evidence obtained by a search or seizure, however, does not

---

[5]Those categories are:

"(1) The relevance of the proffered evidence depends on the existence of the preliminary fact;

"(2) The preliminary fact is the personal knowledge of a witness concerning the subject matter of his testimony;

"(3) The preliminary fact is the authenticity of a writing; or

"(4) The proffered evidence is of a statement or other conduct of a particular person and the preliminary fact is whether that person made the statement or so conducted himself.''

[6]Regarding the ''Facts Redetermined by the Jury'' section, Mr. Witkin says: ''The preliminary fact questions in this class . . . are those which have been 'traditionally regarded as jury questions.' They involve 'the *credibility of testimony* or the *probative value of evidence* that is admitted on the ultimate issues. It is the jury's function to determine the effect and value of the evidence addressed to it. . . . If the judge finally determined the existence or nonexistence of the preliminary fact, he would deprive a party of a jury decision on a question that the party has a right to have decided by the jury.' (Ev. C. 403, Comment.)'' (Witkin, Cal. Evidence (2d ed.) § 1085, p. 1005.)

depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue.''

We hold the established California law before the enactment of the Evidence Code that existence of preliminary facts in search and seizure cases (including the question of a disputed consent) is exclusively for court determination is still the law under the Evidence Code. In fact, that code has cemented preexisting case law. █ Assuming, without deciding,[7] that proof of the preliminary fact should be outside the presence of the jury, defendant was not prejudiced under the circumstances of this case.

The order is affirmed.

Friedman, J., and Regan, J., concurred.

---

[7]Discussion here is academic. We have noted that in section 402 the wording is that the court ''may'' hear preliminary facts out of the jury's presence. ''May'' usually connotes permission. In the ''Comment'' to section 405, as we have noted, the inference is that the jury should not be permitted to hear evidence of a preliminary fact. The evil deprecated, however, is the adverse effect upon a jury likely to occur *should the proffered evidence ultimately be excluded by the court*. (It is the you-can't-unring-a-bell argument.) Where, as here, the court *admits* the proffered evidence it is difficult to perceive harm to a defendant because the jury heard the proof of the preliminary fact. In any event, defense counsel did not object to the procedure—and does not object now. The argument on appeal is that the jury should have heard (and should have become the ultimate arbiter of) the preliminary fact.