[Crim. No. 7734. First Dist., Div. Four. Sept. 30, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY CITRINO, Defendant and Appellant.

COUNSEL

Marteen J. Miller, Public Defender, and Michael F. O'Donnell, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci, Michael J. Kelly, Ira J. Ross, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHRISTIAN, J.—Anthony Citrino appeals, after trial by jury, from a judgment convicting him of robbery (Pen. Code, § 211.) The question is whether identification testimony upon which the conviction rests should have been excluded as tainted by unduly suggestive pretrial photographic identification procedures.

On the evening of July 10, 1968, two men entered a pharmacy shortly before closing time. The pharmacist (Gleason) and the clerk (Carol Pankovich) were the only other persons present. While one of the men (identified at trial as appellant) made a small purchase from Miss Pankovich, the other moved rapidly toward the rear of the store where Gleason was working. The two men then cooperated in robbing the store of money and narcotics, and forced both employees to lie down on the floor before binding their wrists and ankles with adhesive tape. At this point two prospective customers entered the store; one of the robbers went to the front and said that the pharmacy was closed. The customers were later identified as Marsha Cariglia and Mary Vanderwerff. After the robbers left, Miss Pankovich managed to free herself and Gleason who then called the police.

Approximately two months later, on September 16, a police officer displayed to Miss Pankovich 10 photographs, one of which she picked out as looking "like the man who I saw the most during the robbery." Miss Pankovich had earlier described this individual to investigators as having long hair and glasses. The picture she identified is the only photograph of the 10 shown to her which portrays a man with long hair and glasses.

Within a few days the officer returned and showed Miss Pankovich the same set of pictures. At that time Miss Pankovich picked out the same picture and was then asked to find another photograph of the same man. After studying the pictures for about 15 minutes, and looking through them several times, she tentatively identified another as showing the same man. She was then informed that her identification was correct and that the two photographs were indeed of the same man. The newly identified

picture shows appellant with short hair and without glasses. A lineup was then conducted in which appellant was presented along with five other men. After five to seven minutes, Miss Pankovich identified appellant. At trial she identified appellant in court as one of the robbers, declaring "it's not a positive identification."

On the day before trial, witnesses Cariglia and Vanderwerff were brought to the district attorney's office and shown a group of five photographs, and were asked if they could identify the man they had seen at the pharmacy. Three of the five photographs depicted appellant. One of the pictures of appellant was attached to a fingerprint identification card which indicated that he had already been twice convicted of burglary. The witness picked out one of the pictures of appellant. Both witnesses had seen the man at the drug store only briefly and both were uncertain in their courtroom identification of appellant.

When the defense objected to the in-court identifications, the court took evidence, out of the presence of the jury, and determined that none of the identifications had been tainted by the photographic identification procedures employed by the investigating officers. The question on appeal is whether those determinations can be sustained.

In *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967], the United States Supreme Court noted that incorrect identification may occur even where police "follow the most correct photographic identification procedures." (*Id.* at p. 971.) Observing that "[t]his danger will be increased if the police display to the witness . . . the pictures of several persons among which the photograph of a single such individual recurs or is some way emphasized," (*id.*) the court declared that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Id.*) In *Simmons,* the trial court had not dealt with the question of possible misidentification and, indeed, had denied the accused access to the photographs which had been used to identify him. (*Id.* at p. 970.) Thus it appears that the standard announced in *Simmons* ("a very substantial likelihood of irreparable misidentification") should be applied on appellate review where the trial court has failed properly to consider the likelihood of misidentification arising from the procedure used.

The present case differs procedurally from *Simmons;* the trial court properly held hearings, out of the presence of the jury, to consider the propriety and effect of the identification procedures used. (Cf., *People* v.

*Caruso* (1968) 68 Cal.2d 183, 189-190 [65 Cal.Rptr. 336, 436 P.2d 336].)

The questions for determination by the trial judge may be likened to those presented where the accused attacks the validity of an arrest or of a search and seizure. In such cases, as in the present case, the accused is asserting that the prosecution proceeded illegally in obtaining evidence which may lead to his conviction. That claim places upon the prosecution, as the proponent of the identification evidence, the burden of showing that the offered identification testimony is admissible. (Evid. Code, § 403, subd. (a); Witkin, Cal. Evidence (2d ed. 1966) § 1082 et seq.) ▪ The trial court must determine, as a "preliminary fact" within the meaning of Evidence Code section 402, whether the prosecution has shown, by a preponderance of the evidence, that the identification procedure employed was not in fact overly suggestive. The court's determination of the "preliminary fact" is final in the sense that the admissibility of the proffered evidence is thereby established. (Cf., *People* v. *MacIntosh* (1968) 264 Cal.App.2d 701, 708 [70 Cal.Rptr. 667].) ▪ Nevertheless, if the testimony is admitted, the circumstances of any pretrial identification made by the witness may be put before the jury as bearing on the weight which should be accorded to an in-court identification. ▪ If the trial court determines that the pretrial procedure used was impermissibly suggestive, a further "preliminary fact" is to be determined: the prosecution would have the burden of showing, by *clear and convincing* evidence, that the subsequent in-court identification is not thereby tainted. (See *People* v. *Caruso, supra,* 68 Cal.2d 183, 189-190.) ▪ Where, as in the present case, proper procedure is followed at trial, the appellate court's function is to determine whether the trial court's determinations are supported by substantial evidence.

▪ Miss Pankovich's identification of appellant was uncertain. The procedure used to procure this identification was, in certain aspects, obviously suggestive. Miss Pankovich had described the man without the gun as having long hair and glasses. Of the photographs shown to Miss Pankovich, appellant's was the only one depicting a man with long hair and glasses. In addition, there was a second picture of appellant with short hair and no glasses which, together with the officer's assurance that it was the same man, may have aided Miss Pankovich in her subsequent identifications of appellant at the lineup and in court, in both of which appellant appeared with short hair and no glasses.

Against the foregoing inferences of possible undue suggestion is the

fact that Miss Pankovich was with appellant for a considerable period of time and was able to describe both him and his actions in some detail. Moreover, the trial court had a good opportunity to appraise the critical faculties of the witness. These circumstances form a substantial basis upon which to conclude that her identification was a product of her unaided memory rather than of the photographs she was shown. Accordingly, as to Miss Pankovich, the trial judge's ruling admitting the in-court identification was supported by substantial evidence and must be sustained on appeal.

■ As to the witnesses Cariglia and Vanderwerff, appellant made a strong showing that the photographic identification procedure used was impermissibly suggestive. On the day before trial, when there had been no previous identification and several months had elapsed since the witnesses had briefly seen one of the robbers, the witnesses were shown five photographs, three of which depicted appellant. One of the three pictures of appellant was attached to a fingerprint card indicating that appellant had previously been convicted of two counts of burglary.[1] The witnesses were thereby inevitably made aware that the police suspected appellant and that appellant was a criminal. Moreover, even if the witnesses did not draw these obvious conclusions, the statistical chance for error was greatly increased by the procedure adopted; a mere random choice from among the five pictures would have been subject to the likelihood that one of the three pictures of appellant would be selected. The prosecution, on the other hand, could defend the identification only by showing that the witnesses had briefly seen the man they identified as appellant and that their identification was uncertain. Nothing further was shown by the prosecution to justify the procedure employed, to substantiate the identifications, or to show that they had a source independent of the photographs.

There was thus no substantial evidence to counter appellant's showing that the procedure employed was suggestive, or to show that the in-court identifications had a valid basis. It was therefore error to permit those identifications to be made in the presence of the jury. ■ Exclusion of such testimony would have left only one person (Miss Pankovich) testifying (with reservations) to appellant's presence at the robbery. Her testimony was disputed by appellant's testimony of an alibi. Thus we cannot say that

---

[1] The fact that a third photograph of appellant had been displayed, attached to a fingerprint card bearing appellant's name, did not emerge during the hearing on the motion. But the motion was renewed, and denied, after that fact had come to light later in the trial.

this constitutional error was harmless beyond a reasonable doubt. (Cf., *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

The judgment is reversed.

Devine, P. J., and Rattigan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 25, 1970. Wright, C. J., was of the opinion that the petition should be granted.